## KATZ v SILBERMAN et

Ohio Appeals, 8th Dist, Cuyahoga Co
No 9860. Decided April 28, 1930

M. A. Samolar and Simmons, DeWitt & Vilas, all of Cleveland, for Katz.

Gott, Bloomfield & Orr, Cleveland, for Silberman, et.

SULLIVAN, J.

We think it is organic in the law that one who is primarily responsible is not entitled to rights by way of subrogation and our judgment is, under the allegations of the petition, that the obligation is a primary one, and this conclusion becomes clear after an examination of the Negotiable Instruments Law which in our judgment makes inapplicable the case of Toronto Bank vs Hunter, 4th Bosw. (N. Y.) 646 upon which the plaintiff in error relies. In other words he contends that when there is an acceptance of a bill for the accommodation of the drawer, that between him and the drawer he becomes a surety and upon the payment of the bill he insists he may be subrogated to the rights of the holder regarding any securities of the drawer in the hands of the holder for the security of payment.

The Toronto Bank case supra, it is claimed, supports this theory, but it is our conclusion that it is not a deciding case as against the rights of the parties as fixed by the Negotiable Instruments Law, and a leading case that sustains this proposition is **Richards vs Bank, 81 Oh St 348** and Judge Spear, who is a very learned Judge and who sat upon the Supreme Court Bench of Ohio, wrote the opinion, an excerpt from which we copy:

"The evident intent of the General Assembly by the negotiable instruments act was to revise the general subject of the law of negotiable instruments and where specific provisions are made in the act in respect to a special subject-matter, such provisions must prevail. So where it is declared, as it is here declared, that a party to such an instrument who is absolutely required to pay the same is primarily liable and can be discharged from liability in certain specified ways and for certain specified causes, the reasonable conclusion is that the purpose was to enact that such party can not be discharged in any other way or for any other purpose.

The act further provides that an accommodation party may be a maker without himself, receiving value, that he engages that he will pay the instrument according to its tenor and may be held liable to the holder, though that party knew him to be only an accommodation maker, thus classifying him as one primarily liable, and in a subsequent section the act further purports to embody all the law as to release of parties 'primarily liable' on negotiable instruments by providing for the discharge of the instrument itself."

Plaintiff, by the face of the instrument itself, was undoubtedly obligated primarily and thus because of that there is no foundation for translating the liability into one of a secondary nature and thus it must follow that he is not entitled to subrogation.

Syllabi 1, 2, 3, are worth quoting to substantiate our views and they are as follows:

"1. One who signs a promissory note on the face thereof, and who in that way becomes a surety for the principal maker, is, by force of Sec. 3178a, Revised Statutes, primarily liable for the payment of such note.

2. Section 3175j, Revised Statutes, relating to the discharge of negotiable instruments, provides in what manner, and for what causes, such instruments may be discharged, and, by force of the rule 'expressio unius est exclusio alterious' sureties upon such instruments who are primarily liable thereon cannot be otherwise relieved from responsibility for their payment.

3. The rule of the common law that any agreement between the holder of a promissory note and the principal, which varies essentially the terms of the contract by which a surety is bound without the consent of such surety will work his release from liability, is no longer in force as one who has signed on the face of the instrument, such rule having been in effect abrogated by section 3175j, Revised Statutes."

We find the same holding in many other authorities and quoting from Spire vs Spire, 104 Kansas, 501 we read:

"The maker of a promissory note, in fact surety for a co-maker, is not entitled, on paying the note, to be subrogated to chattel security held by the payee, to the prejudice of other liens on the chattel held by the payee to secure other obligations of the co-maker."

Quoting from Royal Arcanum vs Cornelius, 198 Pa. 46 we read:

"In the well-considered opinion in the case of Royal Arcanum vs Cornelius, 198 Pa. St. 46, cited in support of a portion of the text quoted from Cyc., it is said: 'The object of subrogation is to place a charge where it ought to rest, by compelling the payment of a debt by him who ought in equity to pay it. In short, the doctrine of subrogation is that one who has been compelled to pay a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other, and to indemnify from the fund out of which should have been made the payment which he made.

(Sheldon on Subrogation, Paragraph II). Nor will subrogation ever be en-

forced * * * to the prejudice of the legal or equitable rights of others."

The conclusion to be reached from these authorities is that the plaintiff cannot claim subrogation to the rights of The National City Bank, and consequently there is no cause of action against these defendants for the reasons obviously appearing in these authorities, but the real defect of the petition, and which makes it demurrable, in our judgment, is that it is not shown by way of allegation that the whole liability of the company to the bank has been satisfied. It is clear that until the obligation is satisfied the security could not be disturbed for if the bank was entitled to the full security for its entire indebtedness it would be entitled to the possession and use for security purposes of any portion thereof.

From an examination of the petition we find that payment in full has not been alleged. It is not sufficient to say that payment has been made to the bank on the liability. The object sought is subrogation pro tanto, equivalent to the contribution of the rights of the bank. The pleading is not complete without an allegation of the payment of all of the indebtedness. Then and thereupon subroagtion may be claimed.

We think paragraph 2 of the syllabi in Fisher vs Columbia Building & Loan Co. 59 Miss. Ap Rep. is authority:

"When Operative: Creditor's Assignment. As between the creditor and the surety, the latter has no right of subrogation upon a patrial payment. But when the creditor consents to the surety's subrogation pro tanto, to such subrogation the principal debtor and other creditors can make no objection. As to them it is immaterial whether the surety has or has not completely satisfied the debt."

Again, quoting from 69 Tenn. Rep. 584 in the case of Motley vs Harris, we find the following language from the opinion very applicable to the case at bar:

"This right, however, is not one which can be exercised against the essential interests of the cerditor, whose rights, by virtue of the securities or funds in his hands, are paramount. If the creditor has been paid, he is to remain **paid**; if only secured, he is to remain **secured.** We recognize this as the general rule and unquestionably sound."

This position is also well analyzed in paragraph 127 of Sheldon on Subrogation which is as fllows:

"The right of subrogation does not arise in favor of a surety until he has actually paid the debt for which he is liable as surety; the right does not accrue from a partial payment by the surety until the creditor is wholly satisfied. Even if a surety is liable only for a part of the debt, and pays that part for which he is liable, he cannot be subrogated to the securities held by the creditor until the whole demand of the creditor is satisfied. Where the surety is allowed by bill in equity after the debt has become due to compel the creditor to enforce his demand against the principal debtor, yet he cannot be subrogated to the creditor's lien, securities and equities for the debt until he has actually paid it. So, the indorser of a promissory note which is payable on time and secured by a mortgage of the principal's real estate, who has been compelled by the mortgagee to pay the interest which has become due thereon, cannot enforce the mortgage for his indemnity, while the note remains the property of another holder, and the principal sum is still due thereon. The payment need not be in one sum, but may be made at different times; nor need it be wholly or at all in money, if the creditor accepts something else, though as has been already stated, if it be not in money, the surety's right will extend only to his reimbursement for the real value of what he has paid. It has been held in Missouri that a surety for part of the indebtedness of the principal becomes entitled, by paying the part for which he is liable, to a pro rata or proportionate share of the proceeds arising from a sale of the debtor's property, and may be subrogated accordingly to the rights of the other creditors, so as to have the benefit of all their securities; but this is contrary to the general doctrine. But if the effect of the surety's subrogation would be to give him a lien upon the property of the creditor himself, so that he would be entitled to immediate repayment from the creditor's property, then, to avoid circuity of action, the right may be enforced in the creditor's suit against the surety, without waiting for actual payment."

We deem it unnecessary to quote any more authorities, but there are many.

While we have recourse to the citation of authorities, yet our judgment is that the doctrine at issue is so elemental that even the authorities cited were unnecessary and certainly it would be supererogation to cite any more. The bank could not be disturbed in its security until full payment, whereupon it would lose its rights to the same and immediately the doctrine of subrogation would come into being.

Thus holding the judgment of the lower court is hereby affirmed.

Vickery, PJ, and Levine, J, concur.