THE MUTUAL FINANCE CO., APPELLANT, *v.* POLITZER ET AL., APPELLEES.

[Cite as Mutual Finance Co. v. Politzer, 16 Ohio App. 2d 83.]

84

(No. 29147—Decided November 14, 1968.)

*Messrs. Marshman & Snyder*, for appellant.
*Messrs. Zipkin, Yosowitz & Turoff*, for appellees.

SILBERT, J. This is an appeal on questions of law from a summary judgment for defendants in the Court of Common Pleas of Cuyahoga County.

It was stipulated by and between the parties to this appeal that the entire bill of exceptions herein should be deemed to consist of "the motions for summary judgment filed on behalf of the plaintiff and the defendants" and "the written briefs and affidavit submitted in support thereof * * * together with the pleadings."

In the trial court, plaintiff had sued defendants on their contracts of guaranty. The defendants answered and cross-petitioned alleging that they had sustained financial damage and impairment of credit reputation by virtue of plaintiff's actions and prayed for money only. Plaintiff filed an answer to the cross-petition.

Defendants filed a motion for summary judgment in the cause of action set forth in plaintiff's petition. Plaintiff then filed its motion for summary judgment in the same cause of action. The trial court denied plaintiff's motion and granted that of the defendants and entered judgment dismissing plaintiff's action on the guaranty contracts. The issues raised by defendants' cross-petition and by plaintiff's answer thereto were not affected by the trial court's order and, accordingly, are not involved in our considerations.

Defendants executed absolute and unconditional guaranties for the payment of the debt under a security agreement financing a "floor-plan" loan from plaintiff, appel-

lant herein, to a corporation engaged in selling motor vehicles and owned by the first defendant, Edward Politzer. The other two defendants, Karen Politzer and Shirley Politzer, were, respectively, his wife and mother. Edward and Karen signed a guaranty for an unlimited amount. Shirley's commitment was to the extent of $40,000.

Section 1319.07, Revised Code, provides, in pertinent part, as follows:

"Any chattel mortgagee, his executors, administrators, successors, or assigns who takes goods, chattels, or property, covered by the chattel mortgage out of the possession of the mortgagor, his executors, administrators, successors, or assigns by seizure, or repossession, and sells or otherwise disposes of the same before foreclosure of such mortgage in a court of record, *shall not pursue or collect any deficiency upon such mortgage or the obligation secured thereby, from such mortgagor, his executors, administrators, successors, or assigns*, any stipulation in such mortgage, or agreement, or provision of law to the contrary notwithstanding. This section does not apply if the mortgagee, his executors, administrators, successors, or assigns, gives at least ten days' written *notice to the mortgagor, his executors, administrators, successors, or assigns, * * * of* the time, place, and the minimum price for which the mortgaged property may be sold, together with a statement that the mortgagor may be held liable for any deficiency resulting from said sale. *The mortgagor, his executors, administrators, successors, or assigns, may redeem the property prior to the time stated in the notice for its sale* or disposition, by paying the mortgagee, his executors, administrators, successors, or assigns, the amount due and unpaid on the obligation secured by the mortgage. * * * " (Emphasis added.)

Edward Politzer and Karen Politzer, his wife, purported to waive the notice requirements of Section 1319.07, Revised Code, and acknowledged their personal liability to the extent of any deficiency arising out of such sale.

The sale of the repossessed chattels resulted in a deficiency in excess of $9,000, for which plaintiff sued all three guarantors, without having complied with the notice requirements of the statute in question. The defendants

argued that there had not been compliance with the statute, that such requirements are mandatory and *not* subject to waiver, and that they were entitled to summary judgment on their behalf. Plaintiff claims that the written waiver signed by the Politzers served as a substitute for plaintiff's compliance with the statute, and that the defendants should not be permitted to escape their liability for the deficiency.

The only two questions before this court are as follows:

1. May the notice provision of Section 1319.07, Revised Code, be waived?

2. Where a creditor is barred by Section 1319.07, Revised Code, from seeking to collect a deficiency from a primary obligor, is he also barred from collecting that deficiency from one who has made an absolute and unconditional guaranty of payment on a separate instrument?

Both questions must be answered in the negative.

In *Galloway* v. *Barnesville Loan, Inc.* (1943), 74 Ohio App. 23, the Belmont County Court of Appeals pointed out that a guarantor is not an original contractor and, therefore, is not primarily liable, as is a surety. The court thus declared that a guarantor is ineligible to avail himself of Section 12191, General Code (now Section 1341.04, Revised Code), permitting a surety to require the creditor to commence suit against the principal debtor.

Even a surety, who is "primarily and jointly liable with the principal debtor" (26 Ohio Jurisprudence 2d 300, Guaranty, Section 5) is manifestly not within the purview of Section 1319.07, Revised Code, which deals, not with joint obligors, but rather with successor obligors. "The maxim of *inclusio unius est exclusio alterius* is applicable" to the statute. *Economy Savings & Loan Co.* v. *Weir* (Marion County, 1957), 105 Ohio App. 531, 533. A guarantor, therefore, being readily distinguishable from a surety, whose situation is in turn distinguishable from that of the principal debtor, cannot reasonably be said to be protected by Section 1319.07.

In 26 Ohio Jurisprudence 2d 331, Guaranty, Section 23, it is said:

"* * * But though a contract of guaranty is a collateral obligation and the liability of the guarantor is, originally,

secondary thereunder, yet, after maturity of the debt, default by the debtor, and the performance by the guarantee of any conditions precedent [as with the case of *conditional* guarantor], the guarantor becomes a debtor of, and primarily liable to, the party guaranteed.''

This being so, the liability of the absolute guarantors in this case existed as soon as the principal obligation became due and unpaid. *Castle* v. *Rickly* (1886), 44 Ohio St. 490, 497. Since defendants were *absolute and unconditional guarantors* of payment, plaintiff, as creditor, had no duty to proceed against the maker of the note. 38 Corpus Juris Secundum 1217-1218, Guaranty, Section 61; 38 American Jurisprudence 2d 1116, Guaranty, Section 110; 26 Ohio Jurisprudence 2d 327, Guaranty, Section 21.

Section 1303.52 (A), Revised Code (Section 3-416 (1) of the Uniform Commercial Code), provides as follows:

''(A) 'Payment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor *without resort by the holder to any other party.*'' (Emphasis added.)

Since the holder of the note has no obligation even to attempt to collect a deficiency from the maker, it is difficult to perceive how a guarantor can be relieved of his engagement to pay merely because the holder has made an improper attempt to collect from the maker.

Plaintiff contends that, if the notice provision of Section 1319.07, Revised Code, is applicable to guarantors, defendants have effectively waived its operation. Under the strict provisions of the statute, a mortgagor cannot waive the notice requirements. Even the fact that a chattel mortgagor voluntarily redelivers the property to the mortgagee, with knowledge that it will be sold, does *not* relieve the mortgagee of the burden of complying with the notice requirement of Section 1319.07, Revised Code; and, if a sale of such chattel is held in such case without valid notification, the mortgagee is precluded from seeking the deficiency from the mortgagor. *Lisbon Diesel & Supply, Inc.,* v. *Clement* (Columbiana County App., 1963), 93 Ohio Law Abs. 461, 462. The *Lisbon Diesel case* was approved in the unanimous opinion in *Cities Service Oil Co.* v. *Burkett*

(1964), 176 Ohio St. 449, 454-455, in which the Supreme Court of Ohio stated:

"* * * Obviously, such notice [as provided for in Section 1319.07, Revised Code] is required to enable *the mortgagor* to protect and conserve his financial interest in the best manner he can." (Emphasis added.)

Thus, while it is clear that the notice provision of Section 1319.07, Revised Code, is *not* waiverable, it is equally clear that the sole purpose of the provision is the protection of the mortgagor's equity interest in the mortgaged chattel. An absolute guarantor has no such interest, and has undertaken to guarantee payment, without any conditions or reservations.

In the case of *Economy Savings & Loan Co.* v. *Weir*, 105 Ohio App. 531, the Marion County Court of Appeals stated, in the first paragraph of its syllabus, the following:

"1. An accommodation maker of a note secured by a chattel mortgage, who is not a party to the mortgage, is not specifically entitled to the benefits and protection of Section 1319.07, Revised Code, which, *inter alia,* prohibits the collection of any deficiency from the 'mortgagor, his executors, administrators, successors, or assigns,' where the mortgagee removes the goods from the mortgagor's possession and makes disposition thereof before foreclosure."

The court nonetheless held that an accommodation maker is discharged from liability when the mortgagor is relieved of liability for a deficiency under Section 1319.07, Revised Code. Its reasoning was that, since a mortgagee is prevented by the statute from collecting the deficiency "upon such mortgage or the obligation secured thereby," he has no basis on which to proceed against such accommodation maker.

That case is distinguishable from the one before this court, because the statute prohibits merely the collection of a deficiency "upon such mortgage or the obligation secured thereby, from such mortgagor, his executors, administrators, successors, or assigns, * * *." The accommodation maker's liability in the *Economy Savings case* was predicated upon the note itself. By contrast, the instant case involves a separate guaranty agreement, abso-

lute and unconditional in nature. Moreover, the liability of the guarantors, appellees herein, became primary as soon as default occurred. This being the case, creditor Mutual Finance had no obligation even to attempt to collect the deficiency from the mortgagor. Therefore, no subsequent failure to comply with the statute could eliminate the liability of the guarantors, who became primarily liable on their separate instrument of guaranty *as of the moment of the mortgagor's default.*

Underlying the distinction between the *Economy Savings case* and the one now before us, is the case of *Modern Finance Co.* v. *Reynolds* (1958), 108 Ohio App. 535, which is cited by both parties to this appeal. The case involved a note signed by two separate makers, who mortgaged different items respectively owned by them, as security for a loan to the first maker. Eventually, the mortgagee sought to foreclose against the mortgaged automobile of the first maker, and advised him, in accordance with Section 1319.07, Revised Code, of its intention to sell the auto, but did not so advise the second maker, who had secured her obligation under the note with a mortgage on her household goods and furniture. The mortgagee finance company did not hold the initially-scheduled sale of the auto, because it had determined that the intended minimum bid price was unrealistically high. Instead, it eventually sold the auto, without notice to either maker, for $25.00, crediting that amount to the balance due.

Subsequently, the mortgagee took cognovit judgment against the second maker, and sought to collect the deficiency by foreclosing on the chattels mortgaged by her. She defended that action by asserting that the first maker had not been notified prior to the ultimate sale of the auto, and that she, as second maker, had never been notified of either intended sale of said auto.

The Franklin County Court of Appeals *refused to consider the lack of notice to the first maker, since he was not a party to the action,* and determined that the second maker had not been entitled by Section 1319.07, Revised Code, to notice of sale of the automobile, since such sale did not involve her property. Said the court (at page 537):

"An examination of the statute under consideration

[Section 1319.07, Revised Code] reveals that it requires only that notice be given to *the mortgagor whose property is being seized and sold*, before a deficiency judgment may be taken. This defendant was not the mortgagor of the Buick automobile; hence, notice was not required to be given to her. * * *'' (Emphasis added.)

Thus, even a co-maker has been held not entitled to notice under the statute, on the theory that, if he has no ownership of the mortgaged chattels to be sold, he has no interest intended to be protected by such notice provision. If this be true of one who is a primary obligor, and jointly and severally liable along with the first maker, logic requires that a guarantor, whose property is not mortgaged, and whose liability is originally secondary to that of the maker or makers, be precluded from taking advantage of improper notice to the principal obligor.

Defendants further state that guarantors are entitled to indemnification from the principal debtor, and that if the guarantors have to pay a deficiency to a creditor they can then enforce their rights of indemnification against the principal, notwithstanding that the creditor himself was precluded by Section 1319.07, Revised Code, from collecting from the principal. Defendants contend that a guarantor's right is not by subrogation, but by the implied agreement by the principal to reimburse the guarantor. It is further argued that, if a guarantor has to pay a deficiency which the creditor can no longer collect from the principal because of Section 1319.07, Revised Code, then the guarantor may then recover from the principal the amount paid by the guarantor. Thus, maintain defendants, the mortgagor would be denied the protection which the statute seeks to bestow upon him.

Plaintiff counters with its contention that a guarantor's rights against a principal are solely by subrogation; that if the creditor is precluded by Section 1319.07, Revised Code, from recovering a deficiency from the principal, then the guarantor is similarly precluded.

The law in Ohio appears to be that a guarantor's rights are those of subrogation, not of indemnity. *Gholson* v. *Savin* (1941), 137 Ohio St. 551, 556; *Crawford* v. *Turnbaugh* (1912), 86 Ohio St. 43, 47. Although there is a dis-

tinction in the common law between a surety and a guarantor (*Galloway* v. *Barnesville Loan, Inc.*, 74 Ohio App. 23), a guarantor, like a surety, uses rights of subrogation to recover from a principal debtor. 26 Ohio Jurisprudence 2d 350-351, Guaranty, Section 40. The Uniform Commercial Code provides that " 'Surety' includes guarantor." Section 1301.01 (NN), Revised Code. Section 1341.07, Revised Code, provides:

"When the surety in a judgment, who is certified therein to be such, * * * pays the judgment, or part thereof, to the extent of such payment he shall have all the rights and remedies against the principal debtor that the plaintiff had at the time of such payment. * * *."

However, it appears that, even if the guarantor *may* recover from a principal a deficiency which the guarantor has paid to a creditor, even where the statute precludes the creditor from collecting from the principal, this cannot affect the outcome of the case now before this court. Defendants claim that, if the guarantor is permitted to recover from the principal in such case, the intent of the Legislature would be defeated. They maintain that "such a situation would result in a fraud against the principal debtor as he remains liable to the guarantors for the amount which they paid to the mortgagee when the statute states the principal debtor is relieved from the obligation by the failure of the mortgagee to follow the notice terms of the statute [citing *Gholson* v. *Savin*, 137 Ohio St. 551]."

Such an interpretation of the statute differs from that of the Ohio courts. The Ohio Supreme Court, in *Cities Service Oil Co.* v. *Burkett*, 176 Ohio St. 449, declared that the purpose of the statute's notice provision was to enable *the mortgagor* to protect his interest. If it were possible to include the guarantor within the purview of the statute, then defendants' contention would be applicable, since the guarantor's right to reimbursement obviously would negate the intended effect of the statute, in those cases involving guaranties.

The *Gholson case*, however, merely states that a guarantor is discharged when the creditor makes a complete *settlement* with the principal obligor. Here, by contrast, we deal with a situation wherein a creditor has not agreed

to discharge the principal obligor, but rather has become prevented by operation of law from enforcing his right to collect a deficiency from a mortgagor. In no way does this invalidate the guaranty agreement.

Both the common law and Section 1303.52 (A), Revised Code, manifestly make the guarantor liable to the creditor for the deficiency, and the necessarily strict construction of Section 1319.07, Revised Code, prohibits extending the umbrella of its protection to include a guarantor. The creditor cannot be prevented from enforcing the guaranty. If the Legislature should desire to prevent a creditor, who fails to comply with the notice provision of said statute, from collecting a deficiency from *any* source, it has the ability to do so by extending the protection of the statute to include guarantors. Until it does so, however, the only possible disposition of a case such as this is a finding in favor of the creditor and against an absolute guarantor.

The case law of Ohio makes it manifest that the notice requirement of Section 1319.07, Revised Code, is mandatory and cannot under any circumstances be waived or circumvented, even with the full acquiescence and co-operation of the principal debtor. *Cities Service Oil Co.* v. *Burkett,* 176 Ohio St. 449, and *Lisbon Diesel & Supply, Inc.,* v. *Clement,* 93 Ohio Law Abs. 461. However, (1) such notice requirement is intended for the protection of the principal debtor's equity interest in the mortgaged chattel (*Cities Service Oil Co.* v. *Burkett,* 176 Ohio St. 449; *Modern Finance Co.* v. *Reynolds,* 108 Ohio App. 535), and (2) therefore, a guarantor, who in that capacity has no ownership interest in the mortgaged chattel and who is liable under a contract separate from the security agreement dealt with in the statute, is unable to avail himself of statutory protection afforded to a chattel mortgagor or those in privity with him. For the foregoing reasons, the judgment of the Common Pleas Court in granting summary judgment for defendants is reversed, and final judgment is entered for plaintiff, appellant herein, on plaintiff-appellant's motion for summary judgment, in the sum of $9,287.85.

*Judgment reversed.*

WASSERMAN, C. J., and CANARY, J., concur.