RESOLUTION TRUST CORPORATION, Appellant,

v.

GSW ASSOCIATES, AN OHIO GENERAL PARTNERSHIP, et al., Appellees.

[Cite as *Resolution Trust Corp. v. GSW Assoc.* (1992), 82 Ohio App.3d 75.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–1084.

Decided Aug. 4, 1992.

*Porter, Wright, Morris & Arthur, H. Grant Stephenson* and *Randall W. Knutti,* for appellant.

*Ricketts, Ferron & Onda, Richard T. Ricketts, Rebecca Mills Green* and *Linda E. Juergens,* for appellees Theodor Steilen, Lee Guzzo and Barbara Guzzo.

*Chester, Hoffman, Willcox & Saxbe, John J. Chester* and *Eugene B. Lewis,* for appellee Juanita E. Steilen.

BOWMAN, Judge.

Appellant, Resolution Trust Corporation, moves this court to certify the record of this case to the Ohio Supreme Court, pursuant to R.C. 2501.12 and Loc.R. 12 of the Tenth District Court of Appeals. Certification is urged for the reason that the judgment entered in this case on March 24, 1992 is in conflict with a judgment entered by the Eighth District Court of Appeals in *Milstein v. Simon* (Feb. 22, 1980), Cuyahoga App. No. 40547, unreported.

Section 3(B)(4), Article IV, Ohio Constitution vests in the courts of appeals of this state the power to certify the record of a case to the Supreme Court for review "[w]henever * * * a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals." This court has previously held that certification under the

Constitution will be granted only where the judgment conflicts on the same question. *Johnson v. Indus. Comm.* (1939), 61 Ohio App. 535, 15 O.O. 345, 22 N.E.2d 921. Such conflict must be over a question which is so material to both judgments as to be dispositive of the cases. *Lyons v. Lyons* (Oct. 4, 1983), Franklin App. No. 82AP–949, unreported, 1983 WL 3715. The rule places the Supreme Court in a position to resolve an actual conflict. *Johnson, supra.*

In *Milstein,* the Midwest Prestressed Corporation ("Midwest") borrowed $475,000 from the Cleveland Trust Company and gave back a promissory note in that amount evidencing the obligation on August 4, 1971. Carl Milstein, William Risman and Sidney Simon acted as accommodation parties on the note; however, the liability of the accommodation parties was limited by a letter agreement dated August 4, 1971, which provided:

" ' "In consideration of Carl Milstein, Sidney N. Simon and William B. Risman endorsing the said Note, which endorsement was *demanded* by us as a condition precedent to making the loan evidenced thereby (hereinafter called 'Mortgage Loan'), we agree that *your total liability under said note shall be limited to the balance due in excess of $350,000.00. If, as and when, the unpaid principal balance of said note has been reduced to $350,000.00, then and in such event, and in such event only, you shall be automatically released from any and all further liability* as endorser on the said Note." ' " (Emphasis added.)

In addition, Milstein, Risman and Simon signed a guarantee which provided:

" 'For value received the undersigned, and if there be more than one, each thereof, *agrees to pay, when due,* the within note or any extension or extensions thereof in whole or in part, and waives presentment, demand, protest and notice of protest and non-payment thereof.  * * *

" * * *

" 'The undersigned further agree that each payment made on the interest and/or principal of this note by the Maker, or if there be more than one, by any of the Makers thereof, or by any one or more of the undersigned, shall be deemed for all purposes to have been made for and on behalf of each and all of the undersigned and the said Maker or Makers.  * * *

" * * *

" 'The liability of the undersigned upon the within note is limited pursuant to the terms and provisions contained in the letter from The Cleveland Trust Company* by F.J. Scism, Vice President to Carl Milstein, Sidney Simon and William B. Risman, *dated August 4, 1971,* a copy of which

is attached hereto and made a part hereof *and such liability of the undersigned shall be released as set forth to said letter.'*" (Emphasis added.)

When Midwest defaulted, Cleveland Trust accelerated the loan and instituted a foreclosure proceeding to recover $440,549.61, plus interest due on the note. The court granted foreclosure on the real estate that Midwest had pledged as collateral to secure the loan. Cleveland Trust then repurchased the property at the sheriff's sale, which resulted in proceeds of $279,547.18 being credited to the bank, leaving a balance due of $161,002.43.

Thereafter, various lawsuits were filed, the basis of which was the liability of the guarantors of the mortgage loan made by Cleveland Trust to Midwest. Various motions for summary judgment were filed, wherein Milstein, Risman and Simon contended that they should be relieved of any liability as guarantors, since the total balance due on the note was reduced below $350,000 after Cleveland Trust received the proceeds of the foreclosure sale, and wherein Cleveland Trust claimed the proceeds of the foreclosure sale did not apply to the total balance due in excess of $350,000 so as to relieve the guarantors of their obligations to guarantee the payment of the default principal in excess of $350,000.

The trial court held that the proceeds of the foreclosure sale applied to reduce the unpaid balance below $350,000, thereby automatically releasing the guarantors. Cleveland Trust appealed the trial court's decision, contending that it erred in granting summary judgment against it. The court of appeals held that, after reviewing the guarantee in the August 4, 1971 letter, it found that the guarantors became liable for the unpaid principal balance in excess of $350,000 immediately upon default by Midwest. Thus, Cleveland Trust's application of the proceeds of the foreclosure sale did not release the guarantors from their obligation to pay the balance of unpaid principal in excess of $350,000. The court stated that to hold otherwise would render the guarantee of Milstein, Risman and Simon meaningless and illusory.

The court further stated that it appeared that the purpose of the guarantee was not to secure payment of the entire unpaid principal balance, but was to secure the reduction thereof to an amount for which Cleveland Trust deemed the mortgage a sufficient security. Cleveland Trust apparently felt that the mortgaged property was sufficient security for the loan only up to an amount of $350,000 and that was why it required a personal guarantee to secure the mortgage loan in excess of this amount.

The court relied on *Morgan v. Boyer* (1883), 39 Ohio St. 324, for the principle that a guarantor is bound only by the precise words of the contract and that, based on this rule, a guarantor is not entitled to demand an unfair and strained interpretation of the words in order to be released from the

obligation which the guarantor has assumed. Nevertheless, the *Milstein* court stated:

"We think a fair construction of the terms of the guaranty in light of the surrounding circumstances and the object intended to be accomplished by the parties precludes a finding that the proceeds of the foreclosure sale reduced the unpaid principal balance below $350,000 so as to automatically release the guarantors of their obligation under the guaranty. * * *

" * * * The proceeds of the foreclosure sale received after default on the mortgage loan did not reduce the unpaid principal balance so as to automatically release Milstein, Risman and Simon from their obligation under the terms of their guaranty."

In the case before us, Theodor Steilen and Lee Guzzo executed an adjustable rate note on behalf of Spring Street Associates Limited. The note was secured by an open-end mortgage and security agreement on property on West Spring Street in Columbus, Ohio, and the note did not provide for any recourse against either Steilen or Guzzo. The next day, Steilen, Juanita Steilen, Guzzo and Barbara Guzzo executed a guarantee agreement prepared by Freedom Federal Savings and Loan Association,[1] which provided:

"The undersigned acknowledge that FREEDOM FEDERAL SAVINGS AND LOAN ASSOCIATION will be providing mortgage financing to SPRING STREET ASSOCIATES LIMITED, an Ohio Limited Partnership (Borrower), in connection with a construction loan for the rehabilitation of the building at North Front and Spring Streets, Columbus, Ohio. In connection therewith, lender has agreed to include exculpatory provisions in the Promissory Note which provide that the Borrower shall have no liability for the indebtedness.

"In consideration for the Agreement on the part of Lender to such exculpatory provisions, *the undersigned do hereby unconditionally guarantee the due performance and prompt payment, whether at maturity or by excellleration [sic], or otherwise, of all Borrower's obligations, under the Note, the Mortgage, and the Construction Loan Agreement. Providing, however, that when the project is deemed 100% completed by the Lender, the undersigned's liability shall be limited to the top 20% of the permanent loan.* Such liability shall decrease as the principal amount of the loan is decreased, eventually becoming zero when the principal of the loan has been reduced to 80% of its original amount." (Emphasis added.)

---

1. Freedom Federal Savings and Loan Association was the original appellant in this case; however, Resolution Trust Corporation was appointed the receiver for Freedom Federal and has since been substituted for Freedom Federal in this case.

After some of the principal reduction payments required under the note were made, Spring Street defaulted on its obligation. Freedom Federal subsequently foreclosed on the mortgage executed by Spring Street and, as the sole bidder at the foreclosure sale, purchased the property in question for the price of $2,600,000, two-thirds of the appraised value. The proceeds of the foreclosure sale satisfied the remaining unpaid balance of the top twenty percent of the original amount of the note. As a result, appellees filed motions for entries of satisfaction of judgment. The trial court granted those motions and entered a judgment finding that appellees had no further liability to Resolution Trust Corporation because the foreclosure proceeds reduced the principal amount of the note to below eighty percent of its original principal amount.

An appeal was taken to this court and we relied on *Jirousek v. Prudential Ins. Co.* (1971), 27 Ohio St.2d 62, 56 O.O.2d 34, 271 N.E.2d 866, wherein the court held that parties are presumed to have intended to contract in the manner and form in which they did contract and they are presumed to have intended to give to the language of the contract the ordinary and usual meaning given to the language. Based on this, this court held:

" * * * The language of the guarantee is clear and provides that appellees are only responsible for the top twenty percent of the loan. Thus, when the mortgage loan was foreclosed upon and the property purchased by appellant, two-thirds of the loan amount was paid. This two-thirds includes the top twenty percent that appellees were responsible for under their guarantee. Therefore, as a result of the sale of the property, appellees owe nothing further on their guarantee.

"The guarantee does not provide that, after the sale proceeds are paid on the loan, appellees are responsible for twenty percent of the balance. The guarantee agreement specifically states that appellees are responsible for the top twenty percent of the loan amount. Contrary to what appellant suggests, this guarantee is not illusory. Not only did appellant draft the guarantee, which requires us to construe it in favor of the appellees, but appellant specifically provided that appellees would be responsible for the top twenty percent.

"During the period of construction, appellees were one hundred percent liable for the entire loan amount. It was not until after construction was completed that appellees' obligation was reduced to a guarantee of the top twenty percent of the loan only. *The plain language of the guarantee agreement provides that the top twenty percent guarantee is satisfied upon the reduction of the principal balance to eighty percent of the note. Neither the note nor the guarantee agreement limits the manner in which*

*the principal balance may be reduced to extinguish appellees' guarantee of the top twenty percent of the note.* Appellant drafted the guarantee in a manner which allocated risks among the parties. Simply because the manner in which these risks were allocated resulted in appellees' debt being extinguished by the purchase of the property does not render the guarantee agreement illusory. This was simply a risk of doing business. * * * " (Emphasis added.)

This court finds that this court's opinion and *Milstein* are not in conflict. Both courts relied on the plain language of the guarantee agreements in reaching their decisions. The language in each of the guarantee agreements is very different and provides different conditions on which the obligations would be satisfied and the liability for those obligations released. Further, the guarantees were signed under different circumstances. The guarantee in *Milstein* was demanded by Cleveland Trust as a condition precedent to making the loan. In addition, the guarantors in *Milstein* actually endorsed the original note as accommodation makers. Neither of these circumstances exists in the case before this court.

This court finds that its judgment in this case does not conflict with the judgment in *Milstein.* Both courts relied on the same principles in reaching their decision: that the plain language of the guarantee controls. Simply because the guarantees themselves are different and have different provisions for extinguishing the obligation does not mean that the two courts' interpretations of the guarantee's plain language make these decisions in conflict. Therefore, since there is no demonstrable conflict between this case and *Milstein,* the motion to certify is overruled.

*Motion to certify overruled.*

PETREE and DESHLER, JJ., concur.