STONE, Appellant,

v.

NATIONAL CITY BANK, Appellee.

NATIONAL CITY BANK, Appellee,

v.

STONE, Appellant.*

[Cite as *Stone v. Natl. City Bank* (1995), 106 Ohio App.3d 212.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 67579 and 67709.

Decided Sept. 5, 1995.

---

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was dismissed on application of the parties in (1996), 74 Ohio St.3d 1495, 658 N.E.2d 1064.

214

*McDonald, Hopkins, Burke & Haber Co., L.P.A., Kenneth J. Walsh* and *Robert S. Stone,* for appellant.

*Jones, Day, Reavis & Pogue, Marc Alan Silverstein* and *Robert S. Faxon,* for appellee.

JAMES M. PORTER, Judge.

Plaintiff-appellant Maxeen Stone in case No. 67579 appeals from a summary judgment granted by the trial court in her declaratory judgment action against National City Bank, which held that she was liable on her partial guaranty of a real estate loan and had no priority rights of subrogation or indemnity in other collateral which the bank held to secure the loan. Stone also appeals in case No. 67709 from a cognovit judgment entered against her on the guaranty. We find no error in the judgments below and affirm.

This case arose out of a refinanced real estate loan for $1,600,000 made by the bank to 21111 Chagrin Corporation ("the borrower") on May 9, 1989. At the same time, Stone, president and sole shareholder of the borrower, and her husband (now deceased) executed a guarantee agreement in which they personally "absolutely and unconditionally guarantee[d] the prompt and punctual payment when due to acceleration or otherwise, of the first $400,000.00 (from $1,600,000.00 to $1,200,000.00) of principal due under said [borrower's] promissory note together with all other interest, charges and penalties accruing thereon."

The guarantee also provided:

"It shall not be necessary for Bank to resort to or exhaust its remedies against Borrower or against any other party or parties liable thereon or to resort to property held as security therefor or pertaining thereto, before calling upon the undersigned for payment of the Guaranteed Obligation.

" * * *

"This Guarantee shall become immediately effective and shall continue until the first $400,000.00 of principal under Borrower's said promissory note shall have been paid in full at which time the undersigned shall be released of any and all obligations set forth herein."

The guarantee also contained a cognovit provision authorizing confession of judgment in favor of the bank against the guarantors "after the indebtedness guaranteed hereunder becomes due by acceleration or otherwise."

To further secure the loan, the bank also took a cognovit promissory note from the borrower, a first mortgage on the premises, and an assignment of rents derived from tenants on the premises.

The borrower defaulted on its loan payments and failed to cure its defaults, and the bank accelerated the payment of the entire principal amount. Without proceeding against its other collateral, the bank made a written demand on Stone to honor the obligations of her guarantee, since the amount still due on the loan at the time of default was $1,537,092 plus interest and late charges. Stone brought an action for a declaratory judgment and an injunction (common pleas case No. 264512) to enjoin the bank from seeking a cognovit judgment against her. She contended that the bank was required to execute on its other collateral first, i.e., foreclose on the real estate mortgage, thereby relying on the proceeds of a sheriff's sale to be sufficient to reduce the remaining indebtedness below $1,200,000 and excusing the guarantor's obligations altogether. To bolster this argument, on January 26, 1994, the borrower tendered a quitclaim deed to the mortgaged premises, which the bank declined to accept. A motion for a temporary restraining order to prevent the bank from proceeding against Stone on the guarantee was denied on January 26, 1994.

Following the denial, that same day, the bank filed a complaint for cognovit judgment (common pleas case No. 264696) against Stone, and the court entered cognovit judgment for the bank on the guarantee in the sum of $337,092 plus interest and charges. A motion to set aside the cognovit judgment, for a stay, and for leave to answer was filed on February 9, 1994 by Stone in case No. 264696. At the same time she filed an amended complaint in her original action (case No. 264512). Both actions were assigned to the same common pleas judge.

The parties agreed that both actions involved the same issues and agreed to consolidate the cases. They then filed cross-motions for summary judgment, complete with affidavits, deposition transcripts, documentary exhibits and briefs on the legal issues involved. On June 14, 1994, the trial court granted the bank's motion for summary judgment and denied Stone's motion for summary judgment.

Stone's motion to set aside and vacate was denied, and this timely appeal ensued. The appeals have been consolidated for oral argument and disposition.

Appellant's two assignments of error will be treated together, as the issues arising therefrom are interrelated.

"I.   The court below erred in failing to recognize and declare as a matter of law the rights of appellant as a limited, secondary guarantor of the top portion of the principal debt of the primary debtor to be protected by subrogation, reimbursement, indemnification, or an equivalent lien in the bank's primary security from proceeds of any future sale of that property.

"II.   The court erred in granting summary judgment in favor of the appellee-bank where the bank presented mutually exclusive contradictory evidence creating a genuine material issue of fact going to the heart of its own claimed intent, construction, and interpretation of the loan documents at issue, all while denying appellant her admitted legal status as a limited secondary guarantor."

The critical and dispositive legal issue on this appeal is whether the bank was obliged to exercise its rights to liquidate its other collateral (*e.g.*, the real estate mortgage) before it required payment from the guarantor.   In other words, was the obligation of the guarantor secondary to the primary security of the real estate mortgage?   As a corollary to this claim, the guarantor argues that she is entitled to be subrogated or indemnified to the extent that she fulfills her guarantee obligation from any foreclosure proceeds of the real estate sale before the bank applies those proceeds to the remaining indebtedness.

The bank argues that the guarantee was absolute and unconditional and not subordinate to the real estate mortgage.   Therefore, the bank argues that it is entitled to full satisfaction of the original $1,600,000 indebtedness before the guarantor can claim indemnity or subrogation.   We find that the guarantor's obligation was absolute and unconditional and that she has no claim to indemnity or subrogation until the indebtedness to the bank is fully satisfied from the collateral at its disposal.

Under Civ.R. 56, summary judgment is proper when "(1) no genuine issue as to any material fact remains to be litigated;  (2) the moving party is entitled to judgment as a matter of law;  and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471, 364 N.E.2d 267, 273–274.   It is well settled that the party seeking summary judgment bears the burden of showing that no

genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1987), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–140.

However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099; *Celotex, supra*, 477 U.S. at 322–323, 106 S.Ct. at 2552–2553, 91 L.Ed.2d at 273. In accordance with Civ.R. 56(E), "a nonmovant may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.

"This court reviews the lower court's granting of summary judgment *de novo*." *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, 271; *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157 ("We review the judgment independently and without deference to the trial court's determination.").

In resolving the issues presented by this appeal, we are mindful that "[t]he construction of written contracts and instruments of conveyance is a matter of law." *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262, 264.

The principles of contract construction are no different in the interpretation of guarantee agreements. As this court held in *Camardo v. Timm* (May 2, 1991), Cuyahoga App. No. 57795, unreported, 1991 WL 69343:

"Courts construe guaranty agreements in the same manner as they interpret contracts. *G.F. Business Equip. v. Liston* (1982), 7 Ohio App.3d 223, 224 [7 OBR 285, 285], 454 N.E.2d 1358 [1359–1360]. The interpretation of a written agreement is a matter of law for the court. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241 [7 O.O.3d 403], 374 N.E.2d 146. The purpose of contract construction is to effectuate the intent of the parties. *Skivolocki v. East Ohio Gas* (1974), 38 Ohio St.2d 244 [67 O.O.2d 321], 313 N.E.2d 374, paragraph one of syllabus. The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement. *Blosser v. Enderlin* (1925), 113 Ohio St. 121, 148 N.E. 393, paragraph one of syllabus. The court need not go beyond the plain language of the agreement to determine the parties' rights and obligations if a contract is clear and unambiguous. *Id.* at paragraph two of syllabus; *Uebelacker v. Cincom Systems, Inc.* (1988), 48 Ohio App.3d 268, 271, 549 N.E.2d 1210 [1215–1216]."

Although appellant contends that she does not dispute that the guarantee language allows nonprioritization of remedies, but that she only disputes the court's finding that she has no right to subrogation, we find it necessary to address this prioritization point, given her repeated arguments that she is liable only for the top portion of the debt and not primarily liable.

In reading the agreement, we do not find that the bank was obliged to follow any priority in realizing on its security. According to the language in the agreement, it could choose to exercise or not on any of its collateral. The guarantee expressly authorizes a choice:

"It shall not be necessary for Bank to resort to or exhaust its remedies against Borrower against any other party or parties liable thereon or to resort to property held as security therefor or pertaining thereto, before calling upon the undersigned for payment of the Guaranteed Obligation."

Indeed, as the bank points out, this language follows the common law of Ohio. See, *e.g., Campco Distributors, Inc. v. Fries* (1987), 42 Ohio App.3d 200, 201, 537 N.E.2d 661, 662 ("The creditor need not pursue and exhaust the principal before proceeding against the guarantor."); *Ohio Savings Assn. v. Cortell* (1985), 24 Ohio App.3d 234, 236, 24 OBR 444, 446, 495 N.E.2d 33, 35–36 (bank did not have to pursue other parties before pursuing guarantor for payment.).

Moreover, this court has recently construed similar language in affirming a judgment for a lender who chose to proceed directly against a guarantor notwithstanding a first mortgage lien. See *Soc. Natl. Bank v. Duffy* (Apr. 21, 1994), Cuyahoga App. No. 65246, unreported, 1994 WL 144486. In *Duffy*, the guaranty stated:

"It shall not be necessary for the Bank to resort to or exhaust its remedies against the Debtor or against any other party liable on the Note or to resort to any property held as security therefor or pertaining thereto before calling upon the undersigned for payment of the Note." *Id.* at 8.

Calling the guaranty "a straightforward document," this court held that "Society was not first required to proceed against [the borrower] or its collateral." *Id.* at 11–12. We see no reason to reach a different result here.

Furthermore, the guarantee agreement states that appellant "absolutely and unconditionally" guarantees the payment of the "first $400,000." This court in *Mut. Fin. Co. v. Politzer* (1968), 16 Ohio App.2d 83, 89, 45 O.O.2d 229, 233, 241 N.E.2d 906, 910, recognized that such language causes the guarantor to "become primarily liable on [her] separate instrument of the guaranty as of the moment of * * * default."

■ Appellant argues that if she does ultimately pay all or part of her obligation under the guarantee, she will be entitled to an equitable lien on the mortgaged real estate *prior* to the bank's first mortgage. As a result of what appellant calls "subrogation," she claims entitlement to reimbursement with the funds realized from a future foreclosure sale before the bank receives any of the proceeds.

We note that in *Soc. Natl. Bank v. Duffy, supra,* this court rejected the same argument in an identical context. In *Duffy,* the court rejected the guarantor's argument that the bank was first required to proceed against the borrower and its collateral and then rejected the guarantor's argument that it should have a first right to any money received by Society, stating:

"Second, the Guaranty does not contain any provision which entitles [the guarantor] to 'full faith and credit' for the first $950,000 paid to Society. Third, there is no provision therein allowing the proceeds of the sale of [the borrower] or its collateral to be paid towards appellant's obligation set forth in the Guaranty." *Soc. Natl. Bank v. Duffy,* at 12–13.

Similarly, in the case herein, there is no language in the guarantee agreement entitling appellant to first right to any money received by the Bank from its other collateral sources.

Nonetheless, appellant contends she has this first right to subrogation and that her right to subrogation arises once the bank has been "fully satisfied" by the appellant's payment of the top portion of the debt, as that satisfies her obligation regarding the debt in total. In *United States v. Natl. Sur. Co.* (1920), 254 U.S. 73, 41 S.Ct. 29, 65 L.Ed. 143, the United States Supreme Court referred to "a familiar rule of the law of subrogation under which a surety liable only for part of the debt does not become subrogated to collateral or to remedies available to the creditor unless he pays the whole debt or it is otherwise satisfied." In *Katz v. Silberman* (1930), 8 Ohio Law Abs. 611, 614, this court recognized the "elemental" doctrine that there is no subrogation under such circumstances, citing Sheldon, Subrogation (2 Ed.1893) 191, Section 127:

"Even if a surety is liable only for part of the debt, and pays that part for which he is liable, he cannot be subrogated to the securities held by the creditor until the whole demand of the creditor is satisfied."

This nonsubrogation rule is acknowledged in the Restatement of the Law, Security (1941) 383, Section 141:

"§ 141. SUBROGATION.

"Where the duty of the principal to the creditor is fully satisfied, the surety to the extent that he has contributed to this satisfaction is subrogated

"(a) to the rights of the creditor against the principal, and

"(b) * * * to the interests which the creditor has in security for the principal's performance and in which the creditor has no continuing interest[.]"

Comment *e* elaborates as follows:

"*Comment on Clauses* (a) *and* (b):

"*e.* The surety is not subrogated to the right of the creditor nor to the creditor's interest in security as long as the creditor still has a continuing interest in the right or in the security. The creditor may have such a continuing interest, especially in security, * * * where the surety has only guaranteed part of the principal's duty. The surety in such cases is subrogated only after every duty protected by the security has been fully satisfied. * * *" *Id.* at 387.

In short, until borrower's debt has been fully satisfied, appellant's interest in, or rights to be subrogated to or indemnified from, any proceeds of a future sale is inferior to the bank's first mortgage, not superior.

Appellant further argues that the *Resolution Trust Corp.* cases [1] should control the outcome below and that *Milstein v. Simon* (Feb. 22, 1980), Cuyahoga App. No. 40547, unreported, and *Duffy, supra,* should be overruled. We do not agree.

As we stated above, in *Duffy* the guarantee agreement contained language that the guaranty was "unconditional and absolute" and that the bank did not have to "exhaust its remedies against the debtor or against any other party." The guaranty was for any amount above $3,800,000 of the principal but not in excess of $950,000. This court held that payment of $950,000 by another party did not relieve the guarantor of its obligation to pay the $950,000. In *Milstein* this court held (interpreting language similar to that in the guarantee agreement herein) that proceeds "received after default on [a] mortgage loan [do] not reduce the unpaid principal balance so as to automatically release [the guarantors] from their obligations under the terms of their guaranty." *Duffy* and *Milstein* make it clear that, even if the bank had chosen first to pursue the borrower and foreclose on the real estate, the monies realized from foreclosure still would not have released appellant from her obligations under the guarantee agreement.

*Resolution Trust Corp.* arose after a foreclosure sale had occurred and the proceeds had been applied to reduce the debt. The guarantee in *Resolution Trust Corp.* limited the guarantors' liability "to the top 20% of the permanent loan," and stated that that liability "shall decrease as the principal amount of the loan is decreased, eventually becoming zero when the principal of the loan has

---

1. *Resolution Trust Corp. v. GSW Assoc.* (Mar. 24, 1992), Franklin App. No. 91AP–1084, unreported, 1992 WL 63309; *Resolution Trust Corp. v. GSW Assoc.* (1992), 82 Ohio App.3d 75, 611 N.E.2d 447.

been reduced to 80% of its original amount." 82 Ohio App.3d at 79, 611 N.E.2d at 449. Although the agreement stated that the guarantor's liability was "unconditional," it did not state that it was "absolute" and there was no clause excusing the exhaustion of other remedies. The case also differs from this case in that the lender in *Resolution Trust* filed a foreclosure action and action on the guarantee agreement at the same time. The specific legal issue in *Resolution Trust Corp.* was whether the foreclosure sale purchase reduced the unpaid principal amount to less than eighty percent of the original loan amount, thereby extinguishing the guarantors' liability. The court held that the foreclosure sale proceeds did extinguish the guarantor's liability.

Upon a motion to certify the appellate court's decision in *Resolution Trust* due to its conflict with *Milstein,* the Franklin County Court of Appeals distinguished *Milstein* on the specific language of the guarantee and the fact that the guarantors were also accommodation signers on the note and found no conflict. 82 Ohio App.3d at 80–81, 611 N.E.2d at 449–450. We do not find those distinctions persuasive.

One of the cardinal principles of contract construction is to give reasonable effect to every provision in the agreement. To require the bank to first foreclose on the real estate, or to treat it as though it had done so, would render the clause that appellant "unconditionally and absolutely guarantee[d]" the top portion of the loan and the following provision in the guarantee meaningless:

"It shall not be necessary for Bank to resort to or exhaust its remedies against Borrower or against any other party or parties liable thereon or to resort to property held as security therefor or pertaining thereto, before calling upon the undersigned for payment of the Guaranteed Obligation."

These provisions are clear on their face and need no construction. The parties agreed that appellant was primarily liable for the top portion of the debt, and the bank may call on the guarantors before liquidating any other collateral. We will not make a contract for them they did not make for themselves. We will enforce the one that is written. As stated in *Duffy* at 11:

"If a contract is clear and unambiguous, the court must give effect to the agreement's express terms and it need not go beyond the plain language of the agreement to determine the rights and obligations of the parties. * * * The parties to a contract after all are presumed to have intended to contract in the manner and form in which they did contract."

Therefore, if we were to find the *Resolution Trust* case controlling, these basic principles of contract construction would be ignored. We therefore find *Milstein* and *Duffy* to be controlling authorities.

■ In attempts to create a factual dispute precluding summary judgment, appellant has focused her argument on the phrase "first $400,000.00" of the guarantee agreement, by contending that the bank is merely trying "to upgrade the Guarantor's status to that of a comaker or an accommodation party." However, the "comaker/accommodation party" issue is legally irrelevant to the resolution of this case, as is evidenced from *Soc. Natl. Bank v. Duffy, supra.* In *Duffy,* as here, the guarantor did not separately endorse the borrower's promissory note, yet the court affirmed judgment for the lender. Thus, the bank's interpretation of the guarantee agreement does not fail merely because appellant did not also endorse the promissory note.

■ Appellant lastly advances various theories, such as appellant's 1986 loan from AmeriTrust and the appraised value of the property in 1989. The thrust of this argument is that the court should ignore the guarantee agreement because the fair market value of borrower's mortgage collateral exceeded the loan amount at the time borrower entered into the loan. However, it matters not what value the bank or appellant ascribed to the property at the time the loan was made, because the guarantee disclosed that the bank was not willing to make a loan for $1,600,000 with only the property as security. Whether or not there was a gap is not a material fact under the circumstances at hand.

We have carefully reviewed all the arguments advanced by appellant that there were genuine issues of material fact which precluded the grant of summary judgment. We find that the guarantee provisions bound the appellant as the trial court held and that giving legal effect to those provisions resolved the salient issues in this case.

The two assignments of error are overruled.

*Judgment affirmed.*

PATTON, C.J., and HARPER, J., concur.