Duane NORDIN, Appellee,

v.

NUTRI/SYSTEM, INC., a Pennsylvania corporation, Appellant.

No. 89–5243.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 9, 1989.

Decided Feb. 28, 1990.

Steven R. Anderson, Minneapolis, Minn., for appellant.

Ann L. Iijima, Minneapolis, Minn., for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

MAGILL, Circuit Judge.

Nutri/System, Inc. (NS) appeals from an April 18, 1989 order of the district court enjoining NS from proceeding to arbitration and from an April 25, 1989 order denying its motions to compel arbitration and transfer venue. Two issues are presented by this appeal: (1) whether we have jurisdiction to review the district court's orders, and (2) if we have jurisdiction, whether the district court erred. As to the first issue, we hold that this court has jurisdiction under 28 U.S.C. § 1292(a)(1) (1966 & Supp. 1989) to review both the district court's order enjoining arbitration and its refusal to compel arbitration. However, we do not have jurisdiction to review the district court's refusal to transfer venue. Upon reaching the merits of NS's claims, we affirm the orders of the district court enjoining NS from proceeding to arbitration and denying its motions to compel arbitration.

## I.

Duane Nordin began working for NS as general manager of its Minnesota operations in August 1987. Shortly after he commenced employment, NS required him to complete an employment application which included a covenant not to compete. The agreement provided in part:

> I will not, for a period of two (2) years after termination of my employment, regardless of the cause, within a radius of ten (10) miles from any place of business of my employer or subsidiaries, affiliates and franchises of Nutri/System, Inc. engage in or have an interest in any enterprise which engages in, directly or indirectly, any business in competition with the business of my employer, subsidiaries, affiliates or franchises of Nutri/System, Inc.

Nearly one year after executing the employment agreement, NS required Nordin as a condition of continued employment to sign a non-disclosure agreement which modified the provisions of the restrictive covenant contained in the employment

agreement by expanding the geographic scope and shortening the duration of the original restrictive covenant. The agreement provided in part:

Employee agrees that he/she will not at any time during the term of his/her employment or for a period of one year after termination of employment unless otherwise authorized by N/S become associated, engaged or employed:

(1) in any business of operating, conducting or franchising a specialized weight loss center or in any other business of N/S within a radius of twenty (20) miles from any existing N/S business or franchise; and

(2) in any business in which N/S has evidenced an interest for the purpose of acquisition or future franchising within a radius of twenty (20) miles from any existing N/S business or franchise.

In November 1988, Nordin terminated his employment relationship with NS. Shortly thereafter, he began work as an operational manager for a competitor. On February 1, 1989, Nordin executed a settlement agreement with NS under which he received $14,968 in consideration for several warranties, representations and covenants including in part:

5. Nordin hereby releases and forever discharges Nutri/System from all past, present, or future claims, demands, causes of action, suits, damages, losses and expenses of whatever kind or nature arising out of or resulting from his employment or his leaving Nutri/System.

\*    \*    \*    \*    \*    \*

8. ... the laws of Pennsylvania will govern this Agreement.

9. Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in accordance with the Rules of the American Arbitration Association in its Philadelphia offices, and judgment upon award rendered by arbitrator may be entered in any court having jurisdiction thereof.

Approximately two weeks after executing this agreement, Nordin brought suit against NS in Minnesota state court seeking a declaratory judgment that the restrictive covenants contained in the non-disclosure agreement were void for lack of consideration. On March 4, 1989, on motion of NS, the case was removed to the United States District Court for the District of Minnesota on the basis of diversity jurisdiction. On March 6, 1989, NS filed a unilateral demand for arbitration with the American Arbitration Association based on the settlement agreement. NS subsequently filed a motion to compel arbitration or, in the alternative, to transfer venue and dismiss the complaint. Nordin then moved for a temporary restraining order to enjoin the arbitration proceedings until the court could hold a hearing on the previously filed motions.

On April 18, 1989, following a contested hearing, the district court granted Nordin's motion for a temporary restraining order enjoining NS from "proceeding in any manner to arbitrate or seek arbitration of the disputes ... pending further order of this Court." On April 25, 1989, following another contested hearing, the district court denied NS's motions to compel arbitration and transfer venue. The court took Nordin's motion for a preliminary injunction under advisement pending a future hearing. On May 2, 1989, NS filed a notice of appeal from the district court's April 18 order enjoining arbitration and from the April 25 order denying NS's motions to compel arbitration and transfer venue.

## II.

■ 28 U.S.C. § 1292(a)(1) confers jurisdiction on the courts of appeals to review "[i]nterlocutory orders of the district courts of the United States ... or of the judges thereof, ... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court." In interpreting this section, the Supreme Court in *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct.

1133, 99 L.Ed.2d 296 (1988) (*Gulfstream*), noted in *dicta* that its holding [1] would "not prevent interlocutory review of district court orders when [appellate] review is truly needed." *Id.* at 1142. The Court stated that "[s]ection 1292(a)(1) will ... continue to provide appellate jurisdiction over orders that grant or deny injunctions and orders that have the practical effect of granting or denying injunctions and have 'serious, perhaps irreparable, consequence.' " *Id.* at 1142–43 (quoting *Carson v. American Brands, Inc.*, 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981)). In *Swenson v. Management Recruiters Int'l, Inc.*, 872 F.2d 264 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 143, 107 L.Ed.2d 102 (1989), we explained that in order to meet this standard, the moving party must demonstrate that the order from which it appeals (1) will have serious, irreparable consequences; and (2) can only be effectively challenged on immediate appeal. *Id.* at 266 (citing *Carson v. American Brands, Inc.*, 450 U.S. at 84, 101 S.Ct. at 996).

The Fourth Circuit in *Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp.*, 861 F.2d 420 (4th Cir.1988), was presented with the issue we face today. The appellants appealed the district court's denial of their motion to compel arbitration. The court held the district court's order to be an appealable interlocutory order under 28 U.S.C. § 1292(a)(1). *Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp.*, 861 F.2d at 422. In so holding, the court relied upon the Supreme Court's above-quoted *dicta* in *Gulfstream*. The court held that:

> [o]rders denying arbitration do have an injunctive effect and have 'serious, perhaps irreparable, consequence.' The order is injunctive because it enjoins pro-

ceedings in another tribunal. It has serious consequences because of the 'irreparable harm that exists when arbitration is denied *ab initio* . . . .' If a party 'must undergo the expense and delay of trial before being able to appeal, the advantages of arbitration—speed and economy—are lost forever.'

*Id.* (citations omitted); *see Abernathy v. Southern California Edison*, 885 F.2d 525, 527–28 & n. 9 (9th Cir.1989) (no jurisdiction to entertain appeals from orders staying proceedings pending arbitration and compelling arbitration; holding strictly limited to *grant* of a stay pending arbitration, *not denial;* noted rule of law in Fourth Circuit enunciated in *Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp.*). We find the Fourth Circuit's reasoning to be persuasive.

This court has jurisdiction under § 1292(a)(1) over the district court's denial of NS's motion to compel arbitration. This order, like the order at issue in *Kansas Gas & Elec. Co. v. Westinghouse Elec. Corp.*, has an injunctive effect, and carries with it the serious, perhaps irreparable consequences identified by the Fourth Circuit. Because of these consequences, we find that a denial of a motion to compel arbitration can only be effectively challenged on immediate appeal because the advantages of arbitration will be forever lost if the appeal is delayed. Therefore, we have jurisdiction over the court's denial of NS's motion to compel arbitration pursuant to § 1292(a)(1).[2] *See Swenson v. Management Recruiters Int'l, Inc.*, 872 F.2d at 266.

■ NS also appeals the district court orders enjoining it from proceeding with arbitration. The fact that the April 18

---

**1.** The Court held that "orders granting or denying stays of 'legal' proceedings on 'equitable' grounds are not automatically appealable under § 1292(a)(1)." *Gulfstream*, 108 S.Ct. at 1142.

**2.** Our holding is strictly limited to the *denial* of a motion to compel arbitration. We have no occasion to offer an opinion on whether we have jurisdiction to entertain an appeal of a *grant* of a motion to compel arbitration. We note, however, in *Abernathy v. Southern California Edison*, 885 F.2d 525 (9th Cir.1989), the Ninth Circuit held that an order *granting* a stay

pending arbitration is not ordinarily an injunction within the meaning of § 1292(a)(1), and is not ordinarily appealable under that section. *Id.* at 528. The court concluded that an order compelling arbitration is not ordinarily appealable under § 1292(a)(1). *Id.; see also Zosky v. Boyer*, 856 F.2d 554, 560–61 (3d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 868, 102 L.Ed.2d 992 (1989); *VDA, De Fuertes v. Drexel, Burnham, Lambert, Inc.*, 855 F.2d 10, 11 (1st Cir. 1988) (per curiam).

order enjoining arbitration was titled as a temporary restraining order does not affect our ability to entertain jurisdiction under 28 U.S.C. § 1292(a)(1). If the order is in substance a preliminary injunction rather than a temporary restraining order, it is appealable under § 1292(a)(1). *Quinn v. Missouri,* 839 F.2d 425, 426 (8th Cir.1988) (subsequent history omitted) (per curiam); *Edudata Corp. v. Scientific Computers, Inc.,* 746 F.2d 429, 430 (8th Cir.1984) (per curiam). The April 18 temporary restraining order—which has no expiration date on its face and which exceeded the ten-day limit of Fed.R.Civ.P. 65(b) as of the date of the notice of appeal—must be treated as a preliminary injunction and therefore is appealable. *Quinn v. Missouri,* 839 F.2d at 426; *Edudata Corp. v. Scientific Computers, Inc.,* 746 F.2d at 730; *Waste Management, Inc. v. Deffenbaugh,* 534 F.2d 126, 129 (8th Cir.1976).

■ Finally, NS appeals the district court's order denying NS's motion to transfer venue. We lack jurisdiction to review that order under both 28 U.S.C. § 1291 and the collateral order doctrine. *See Lauro Lines S.R.L. v. Sophie Chasser,* — U.S. ——, 109 S.Ct. 1976, 1977, 1980, 104 L.Ed.2d 548 (1989). NS does not argue, however, that we have jurisdiction pursuant thereto. Instead, NS argues that we have jurisdiction under § 1292(a) to decide matters inextricably bound up with the remedial decision. In *Emerson Elec. Co. v. Black & Decker Mfg. Co.,* 606 F.2d 234 (8th Cir.1979), a panel of this court noted that

'[o]rdinarily, no appeal can be taken from district court orders on transfers between districts pursuant to 28 U.S.C. § 1404(a) ... or from orders staying proceedings pending suit in another court.... However, the denial of an injunction against suit in another forum is appealable as of right, 28 U.S.C. § 1292(a), and it has been held that in venue cases such as this the court of appeals will review the entire venue question as ancillary to the appeal from the disposition of the request for an injunction against a suit in another district.'

*Emerson Elec. Co. v. Black & Decker Mfg. Co.,* 606 F.2d at 237 (citations omitted). In a footnote, we noted our recognition that the filing of an injunction "defeats the non-appealability of the transfer order. Until § 1292(a) is amended, ... appellate jurisdiction over an injunction order will, in view of case law, continue to enable counsel to carry the entire question up for review." *Id.* at 237 n. 7.

*Emerson* does not support jurisdiction to review the district court's order denying NS's motion to transfer venue. Because the injunction in this case operates to enjoin proceedings before an arbitrator and not another court as in *Emerson,* the proper venue of this case is not a matter inextricably bound up with the court's remedial decision. The two issues are separate and independent. The venue decision involves determining the forums and courts in which to sue. The injunction decision involves determining whether the dispute must first be resolved by an arbitrator. The language of both the non-disclosure and settlement agreements makes it clear that the arbitrability of this dispute has little to do with the proper venue of this matter.

First, although the non-disclosure agreement acknowledges Nordin's consent to suits in Pennsylvania courts, it does not limit jurisdiction to that state but merely identifies Pennsylvania as one possible forum. Second, the settlement agreement which provides not only that arbitration shall take place in Pennsylvania but that the agreement shall be governed by Pennsylvania law, also does not require that suit be filed in Pennsylvania. Other courts can, and often do, apply the law of another forum. For example, the United States District Court for the District of Minnesota can apply Pennsylvania law and decide whether to enjoin an arbitration proceeding in Pennsylvania. Therefore, the proper forum for this case is not dependent upon whether the dispute is arbitrable.

■ Finally, the Federal Arbitration Act provides further support for our refusal to exercise jurisdiction over the venue question. It provides in part that where the

parties have not agreed to enforce the arbitration award in a specific district court, "such application *may* be made to the United States court in and for the district within which such award was made." 9 U.S.C. § 9 (1970 & Supp.1989) (emphasis added). This permissive language does not limit venue only to Pennsylvania even if the dispute were arbitrable. Therefore, the issues of arbitrability and venue are not interrelated and as such we have no jurisdiction to review the court's decision refusing to transfer venue. We only have jurisdiction to entertain NS's appeals of the district court orders (1) enjoining NS from proceeding with arbitration; and (2) denying NS's motion to compel arbitration.

### III.

■ In reviewing the district court's disposition of the merits of this dispute, we must first identify the appropriate standard of review. We are persuaded that when the determination of the arbitrability of a dispute is at issue, the district court's orders must be reviewed *de novo* only to the extent we are reviewing the actual language of the arbitration agreement. *See Kansas Gas & Elec. v. Westinghouse Elec. Corp.*, 861 F.2d at 422; *cf. Gans v. Merrill Lynch Futures, Inc.*, 814 F.2d at 495. However, to the extent that the district court's order is based upon factual findings, our review is guided by the clearly erroneous standard. *See Seaboard Coastline Railroad Co. v. Trailer Train Co.*, 690 F.2d 1343, 1348 (11th Cir.1982).

There is a strong presumption favoring arbitration. The Supreme Court has instructed that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *accord Waddell v. Shriber*, 465 Pa. 20, 348 A.2d 96 (1975); *Mendelson v. Shrager*, 432 Pa. 383, 248 A.2d 234 (1968); *Sanitary Sewer Auth. of the Borough of Shickshinny v. Dial Assocs. Constr. Group, Inc.*, 367 Pa. Super. 207, 211, 532 A.2d 862, 863–64 (1987). We have said that the "first task

for a court asked to compel arbitration is to determine whether the parties agreed to arbitrate that dispute. If so, the next step is to consider whether some external legal constraint forecloses arbitration of those claims." *Gans v. Merrill Lynch Futures, Inc.*, 814 F.2d 493, 495 (8th Cir.1987) (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).

■ As we have noted, however, the presumption of arbitrability is not without limits. In *AT & T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the Supreme Court noted that " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.' " *Id.* at 648, 106 S.Ct. at 1418 (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960)); *accord* 42 Pa.C.S. § 7303 (written agreement to arbitrate necessary before dispute may be referred to arbitration). The Court further noted that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 649, 106 S.Ct. at 1418 (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. at 582–83, 80 S.Ct. at 1352–53). Therefore, it was for the district court, not an arbitrator, to determine whether there was in fact an agreement to arbitrate the provisions of the non-disclosure agreement.

### A.

■ The district court denied NS's motion to compel arbitration on the basis that the non-disclosure agreement containing the restrictive covenant contains no arbitration clause. The court further found that the arbitration clause in the settlement agreement does not apply to the non-disclosure agreement. This conclusion was based upon two specific findings: (1) the non-compete provision at issue in this case was not specifically incorporated by reference in the settlement agreement, and (2)

the language of the release clause in that agreement cannot be interpreted to include this action thereby making applicable its arbitration clause. *Nordin v. Nutri/System, Inc.,* No. 489–167, slip op. at 3 (D.Minn. Apr. 25, 1989).

We hold that the district court properly concluded that the language of the release clause in that agreement cannot be interpreted to include this action thereby making applicable its arbitration clause. Pursuant to the release clause of the settlement agreement, Nordin agreed to release and forever discharge "Nutri/System from all past, present, or future claims, demands, causes of action, suits, damages, losses, and expenses of whatever kind or nature arising out of or resulting from his employment or *his leaving Nutri/System.*" Settlement agreement § 5. The settlement agreement further provided that "[a]ny controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration." *Id.* § 9.

The release provision, on its face, is at least ambiguous.[3] One possible interpretation is that it releases NS from all suits resulting from Nordin's employment and his leaving NS whether the claim is asserted by Nordin or NS. Therefore, because Nordin's suit arose out of the termination of his employment relationship with NS, the release provision contained in the settlement agreement could be said to incorporate Nordin's challenge to the non-disclosure agreement. Another possible interpretation is that the release clause affects only claims that Nordin has against NS. Nordin could assert a defense to any action brought against him by NS for breach of the non-disclosure agreement. In this case, Nordin's suit is one for a declaratory judgment which in effect enables him to assert his defense in advance of NS's assertion of its claim. Therefore, under this latter interpretation the release clause would not affect NS's claim against Nordin for violating the terms of the non-disclosure agreement. As a result, the dispute would not be arbitrable. We agree with the district court and find the latter interpretation to be the more reasonable one.

■ Furthermore, Nordin alleged in argument before the district court that NS assured him that the settlement agreement was not only separate from the earlier non-disclosure agreement but it was intended to address financial matters only. In reliance on that representation, Nordin executed the settlement agreement in order to obtain payment of overdue compensation. These assertions were at least implicitly credited by the district court when it found that the non-compete provision at issue was not specifically incorporated by reference in the settlement agreement. We find this conclusion not to be clearly erroneous but entirely reasonable. Therefore, because the non-disclosure and settlement agreements are separate and independent and the non-disclosure agreement containing the disputed restrictive covenant contains no arbitration clause, the district court did not err in denying NS's motion to compel arbitration.

### B.

■ NS also appeals the district court's order enjoining it from proceeding with arbitration. We have set forth four factors that must be considered before a court can issue a preliminary injunction. They include: (1) threat of irreparable harm; (2) a balance of equities; (3) the probability of success on the merits; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.,* 640 F.2d 109, 113 (8th Cir.1981).

Because of our holding that the district court's conclusions are not clearly erroneous and that the district court has not committed a mistake of law, we affirm the district court's injunction because of the high probability of success on the merits, the likely threat of irreparable harm and the public interest in favor of enforcement

---

**3.** When a release clause is ambiguous, it becomes necessary to examine the circumstances surrounding its execution. *Cf. Erie Telecommunications v. City of Erie, Pennsylvania,* 853 F.2d

1084, 1100 (3d Cir.1988) (release clause which was clear and unambiguous "refutes any argument that the circumstances surrounding its execution should restrict its scope in any way").

of arbitration only where the parties have so agreed.

## IV.

In conclusion, we affirm the district court's denial of the motion to compel arbitration and the injunction against arbitration. Because we do not have jurisdiction over the district court's refusal to transfer venue, we express no opinion on the merits of that issue.