# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1635

_____

Robert Keymer,            *
                                   *

           Appellee,        *

                                   *    Appeal from the United States
    v.                              *    District Court for the
                                   *    Eastern District of Missouri.

Management Recruiters International,   *
Inc.,                                 *

                                   *

           Appellant.       *

_____

Submitted: September 25, 1998
Filed: December 4, 1998

_____

Before BOWMAN, Chief Judge, JOHN R. GIBSON, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

BOWMAN, Chief Judge.

Robert Keymer sued Management Recruiters International, Inc. (MRI) alleging MRI terminated his employment because of his age. MRI moved for an order staying all proceedings pending arbitration. The District Court[1] denied the motion concluding

_____

[1]The Honorable Lawrence O. Davis, United States Magistrate Judge for the Eastern District of Missouri, who presided with the consent of the parties pursuant to 28 U.S.C. § 636(c).

that the parties' employment agreement excluded the dispute from arbitration. MRI appeals the denial of the motion to stay the action pending arbitration.

## I.

Keymer was employed by MRI from approximately 1970 until November 30, 1995, when he was terminated at the age of 52. Keymer filed a complaint alleging violations of his employment rights under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621-634 (1994), and the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010-.137 (1994).[2] Keymer asserted that MRI terminated him on

---

[2]Keymer filed his complaint on August 29, 1997, and MRI filed its motion to stay proceedings pending arbitration on October 24, 1997. On October 15, 1997, MRI filed a motion to compel arbitration with the United States District Court for the Northern District of Ohio. The District Court in Missouri denied the motion to stay on January 15, 1998. The district court in Ohio granted MRI's motion to compel arbitration on April 8, 1998 and an appeal of that order is pending before the United States Court of Appeals for the Sixth Circuit.

In cases of concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case as a matter of federal comity. See Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1004-05 (8th Cir. 1993); see also Smith v. SEC, 129 F.3d 356, 361 (6th Cir. 1997). The first-filed rule gives priority, when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction in order to conserve judicial resources and avoid conflicting rulings. See Northwest, 989 F.2d at 1006. Because the District Court in Missouri was the first court in which jurisdiction attached, it had priority to consider this arbitrability question as a matter of comity.

After the District Court in Missouri denied the stay on the ground that the dispute was not arbitrable according to the Agreement, the district court in Ohio proceeded to decide the same arbitrability question contrary to the principles underlying the first-filed rule. MRI argues that the district court in Ohio should have priority because only that court could order arbitration both within its district and in compliance with the Agreement (which calls for arbitration in Cleveland, Ohio) as required by 9 U.S.C. § 4

account of his age and replaced him with a younger employee while retaining similarly situated younger employees.

Keymer and MRI had executed a Manager's Employment Agreement on November 13, 1974, and had renewed it on subsequent dates. Section 6 of the Agreement provides, in relevant part, as follows:

> MEDIATION AND ARBITRATION. (a) Except as provided in Subsection 6(b) hereof, all controversies, claims, disputes and matters in question arising out of, or relating to, this Agreement or the breach thereof, shall be decided by mediation and/or arbitration in accordance with the provisions of this Section 6. . . .
>
> (b) Controversies, disputes and matters in question regarding EMPLOYER'S right to terminate this Agreement shall be specifically excluded from the foregoing mediation and arbitration procedure.

Keymer asserts that subsection 6(b) excludes his claims from the agreement to arbitrate. MRI responds that subsection 6(b) was not intended to limit the scope of the arbitration clause in subsection 6(a). Instead, MRI argues that subsection 6(b) was intended only to keep an arbitrator from determining that this was not an employment at will relationship.

---

(1994). Even assuming MRI's contention is correct, it is irrelevant because the arbitrability question is the same in a motion to compel arbitration as in a motion to stay proceedings pending arbitration. We therefore reject MRI's argument that the Northern District of Ohio should have priority.

## II.

MRI's motion for a stay of proceedings pending arbitration was filed pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 3 (1994), which states that the court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application . . . stay the trial . . . until arbitration has been had." Therefore, we must decide whether Keymer's age discrimination claims are arbitrable under the Agreement. If the claims are arbitrable according to the terms of the Agreement, the proceedings must be stayed pending arbitration. See ITT Hartford Life & Annuity Ins. Co. v. Amerishare Investors, Inc., 133 F.3d 664, 668 (8th Cir. 1998).

When the issue is the arbitrability of a dispute based on contract interpretation, we are presented with a legal question that we review de novo. See Storey v. Shearson Lehman Hutton, Inc., 949 F.2d 1039, 1040 (8th Cir. 1991); Nordin v. Nutri/System, Inc., 897 F.2d 339, 344 (8th Cir. 1990). To the extent the order of the district court concerning arbitrability is based on factual findings, we review using the clearly erroneous standard. See Nordin, 897 F.2d at 344.

The purpose of the FAA was to reverse judicial hostility to arbitration agreements and to place arbitration agreements on equal footing with other contracts. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991) (finding ADEA claims are arbitrable). Thus we examine arbitration agreements in the same light as any other contractual agreement. See ITT Hartford, 133 F.3d at 668. We apply ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter. See First Options of Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1924 (1995); Patterson v. Tenet Healthcare, Inc., 113 F.3d 832, 834 (8th Cir. 1997). According to section 9 of the parties' Agreement, Ohio law governs in this case.

-4-

In deciding whether MRI and Keymer have agreed to submit this particular dispute to arbitration, we must find that a valid agreement to arbitrate exists between the parties and, if so, that this dispute falls within the scope of the arbitration agreement.  See Daisy Mfg. Co. v. NCR Corp., 29 F.3d 389, 392 (8th Cir. 1994).  The parties do not dispute that a valid arbitration agreement exists, but they disagree as to whether this particular dispute falls within that agreement.

MRI is correct in stating that arbitrability questions must be considered with a "healthy regard for the federal policy favoring arbitration" and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). However, the FAA's pro-arbitration policy does not operate without regard to the intent of the contracting parties, for arbitration is a matter of consent, not of coercion.  See Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995).  Thus, a party cannot be forced to submit to arbitration any dispute that he has not agreed to submit. See ITT Hartford, 133 F.3d at 668.  Against this background, we must consider whether by entering into the Agreement MRI and Keymer agreed to arbitrate these age discrimination claims.

We agree with the District Court's well-reasoned opinion that the language in subsection 6(b) is clear and unambiguous.  When a contract is clear and unambiguous, we must give effect to the agreement's express terms and need not go beyond its plain language to determine the rights of the parties.  See Stone v. National City Bank, 665 N.E.2d 746, 752 (Ohio Ct. App. 1995).  Thus, it is not necessary to consider MRI's extrinsic evidence of its "true intent" in drafting subsection 6(b).  After all, the intent of the parties is presumed to reside in the language they chose to use in the agreement. See Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth., 678 N.E.2d 519, 526 (Ohio 1997).  The Agreement expressly states that "[c]ontroversies, disputes and matters in question regarding EMPLOYER'S right to terminate this Agreement shall be specifically excluded from the foregoing mediation

and arbitration procedure," and the ADEA clearly limits MRI's right to terminate employment. Therefore, Keymer's ADEA challenge to the termination of his employment is excluded from the agreement to arbitrate by the plain language of the parties' Agreement.

MRI argues that the exclusionary clause is ambiguous, but MRI cannot create ambiguity merely by so stating in an affidavit. When the contractual language is unambiguous, we will not find ambiguity based on extrinsic evidence as to "true intent." Furthermore, if any ambiguity were to be found, MRI drafted the Agreement and it cannot now claim the benefit of the doubt. See Graham v. Drydock Coal Co., 667 N.E.2d 949, 952 (Ohio 1996) (stating that ambiguity is to be construed against the party who drafted the contract).[3]

MRI asserts that arbitration should not be denied in this case "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986) (internal quotation omitted).[4] The

---

[3]MRI argues that Keymer's age discrimination complaint alleges only termination of employment and not termination of the employment agreement, so the exclusion should not apply. This is a new argument, made for the first time after the case has come to us on appeal. It never was raised in the District Court. In any event, we regard this as a frivolous argument.

[4]The Supreme Court has applied this presumption of arbitrability in collective bargaining agreements. See Wright v. Universal Maritime Serv. Corp., No. 97-889, 1998 WL 788796 (Nov. 16, 1998) (discussing but not resolving the tension between the collective bargaining line of cases holding that an employee's rights under Title VII cannot be prospectively waived and the Gilmer line of cases holding that the employee's right to a judicial forum for ADEA claims can be waived). Even under this presumption the arbitration agreement at issue is not susceptible of MRI's limited interpretation.

arbitration clause in subsection 6(a) is very broad. But the arbitration clause, by its own terms, is made subject to the limitations set forth in the exclusionary clause in subsection 6(b). This clause clearly would exclude the issue of whether Keymer was an employee at will as MRI suggests, but it is not limited to that narrow question. To the contrary, the language of subsection 6(b) is quite sweeping and does not state (or even hint) that other sorts of disputes regarding MRI's right to terminate Keymer's employment are not covered by the exclusionary clause. Linguistically, the scope of subsection 6(b) is not susceptible of the limited interpretation for which MRI contends.

MRI suggests that the exclusionary clause at issue here is substantially the same as that in Management Recruiters International, Inc. v. Zeck, No. 1:91CV1043, at 4 (N.D. Ohio 1994) (order compelling arbitration) ("The right of the Company to terminate this agreement shall not be subject to arbitration."). In Zeck, the district court held that the just-quoted language did not exclude the plaintiff's wrongful termination claim from arbitration. First, we note our respectful disagreement with the holding in Zeck. Second, although the language of the exclusionary clause in Zeck may be somewhat similar to the language of the exclusionary clause in this case, there are important differences. The exclusionary clause in the present Agreement states that "[c]ontroversies, disputes and matters in question regarding EMPLOYER'S right to terminate this agreement" shall be excluded from arbitration. "Controversies, disputes, and matters in question" cannot be mere surplusage as MRI contends, because contracts must be interpreted to give effect to every provision. See Prudential Ins. Co. of Am. v. Corporate Circle, Ltd., 658 N.E.2d 1066, 1069 (Ohio Ct. App. 1995). The plain language of the exclusionary clause in the Agreement before us clearly encompasses all disputes regarding MRI's right to terminate and entirely withdraws such matters from the arbitration process.

The FAA's primary purpose is to ensure that agreements to arbitrate are enforced according to their terms and that parties are free to structure their arbitration agreements as they wish. See Mastrobuono, 514 U.S. at 57. Although federal policy

favors arbitration, it does not disregard the intent of the contracting parties as evidenced by their agreement. We are bound to interpret this Agreement in accordance with the intentions of both MRI and Keymer as expressed in the Agreement, even if the result is to preclude arbitration. We agree with the District Court that Keymer, never having agreed to arbitrate his age discrimination claims, is entitled to pursue his lawsuit.

The judgment of the District Court is affirmed.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

I respectfully dissent from the court's conclusion that the arbitration clause at issue in this case is not ambiguous. It seems quite plain to me that, on its face, it can bear the meaning that MRI ascribes to it. In fact, I would say that the meaning that MRI argues for is rather more reasonable than the one that Mr. Keymer urges us to adopt. That being the case, I simply cannot say " 'with positive assurance,' " or, indeed, with any assurance whatever, that the relevant clause " 'is not susceptible of an interpretation that covers the asserted dispute.' " AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986), quoting United Steelworkers v. Warrior and Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). At the least, the district court erred, in my view, in not considering MRI's proffered extrinsic evidence as to the meaning of the clause. Even without the proffered extrinsic evidence, the presumption of arbitrability ought to carry the day for MRI in this case.

I therefore respectfully dissent from the court's order in this case, and would reverse the district court's order and remand the case to the district court for further proceedings.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.