# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3420

_____

Matthew Enderlin, on behalf of      *
himself and all others similarly      *
situated,      *
     *
           Appellee,      *
     *    Appeal from the United States
     v.      *    District Court for the Eastern
     *    District of Arkansas.
XM Satellite Radio Holdings, Inc.;      *
XM Satellite Radio, Inc.,      *
     *
           Appellants.      *

_____

Submitted: March 15, 2007
Filed: April 18, 2007

_____

Before RILEY, BOWMAN, and ARNOLD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Matthew Enderlin brought the present action against XM Satellite Radio Holdings, Inc. and XM Satellite Radio, Inc. (referred to collectively in this opinion as XM Radio), claiming violations of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101 to 4-88-115, and seeking compensatory damages, punitive damages, and injunctive relief. XM Radio contends that these claims are subject to arbitration under the customer service agreement that it entered into with Mr.

Enderlin. The district court[1] denied XM Radio's motion to dismiss or stay the proceedings, holding that it was for the court to determine the threshold issue of arbitrability. We affirm.

We have held that when the issue presented "is the arbitrability of a dispute based on contract interpretation, we are presented with a legal question that we review de novo." *Keymer v. Management Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999); *see also Nitro Distrib., Inc. v. Alticor, Inc.*, 453 F.3d 995, 998 (8th Cir. 2006). The central issue in this case is whether a contractual provision by which the parties agreed to arbitrate any contractual disputes (the arbitration clause) requires arbitration of the threshold question of whether the arbitration clause itself is enforceable, or whether a limited exception in the contract applies so as to require the district court to resolve that matter.

Mr. Enderlin challenges the arbitration clause (§ 11(b)) of his contract with XM Radio on the ground that it lacks mutuality of obligation, that it is unconscionable, and that it violates public policy. Section 11(b) requires the parties, with certain exceptions and after attempting to resolve their disputes informally, to submit to arbitration any "Claim." "Claim" is defined as "any legal or equitable claim relating to this Agreement, or the Services." This means, as relevant here, that Mr. Enderlin and XM Radio are required to submit to arbitration any legal or equitable claim arising from their contract.

We hold, first of all, that Mr. Enderlin's contention that the arbitration clause is void is a "claim" within the meaning of that word in § 11(b) of the contract. We acknowledge that construing the word "claim" to include a defense to arbitrability may

---

[1]The Honorable Garnett Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

seem at first a bit awkward, but we believe that it is not unreasonable to describe this case as involving a "claim" by Mr. Enderlin that he need not arbitrate his dispute.

Claims, as we have said, are ordinarily subject to arbitration under § 11(b). Section 11(c) of the contract, however, excepts from arbitration, *inter alia*, "any Claim based on Section 11(b) above." *See* § 11(c)(ii). We think that the plain language of this exception necessarily includes a challenge to the enforceability of § 11(b) itself. (We use the term "includes" because subsection 11(b)(iii), as we point out later, provides for other instances in which the parties may litigate disputes, and we believe that the exception in § 11(c)(ii) encompasses these claims as well.) We note that this reading of § 11(c)(ii) does not, as XM Radio insists, nullify the arbitration provision, thus allowing the parties to bring any claim arising under the contract in court. A claim based on the breach of some other provision of the contract (or, *e.g.*, that such other provision is unconscionable or violates public policy) would not fall under § 11(c)(ii) because such a claim would not be "based on Section 11(b)." It would be based on another section of the contract.

XM Radio argues that because § 11(b) provides that "[t]he arbitration will be conducted under the Commercial Arbitration Rules of the American Arbitration Association ('AAA Rules')," and because the AAA rules require the arbitrator to determine issues of arbitrability, only the arbitrator may decide Mr. Enderlin's claim that the arbitration clause is unenforceable. Section 11(b), however, also provides that "[i]f there is a conflict between the AAA Rules and the rules set forth in this Agreement, the rules set forth in this Agreement will govern." Given the § 11(c)(ii) exception, XM Radio's argument is meritless.

XM Radio also maintains that because the other exceptions contained in § 11(c) refer to "disputes" rather than "Claims," the reference in § 11(c)(ii) to any "Claim" based on § 11(b) must relate solely to the subsection of § 11(b) that gives the parties a right to litigate any arbitration award that results from the arbitrator's failure to

follow applicable law. *See* § 11(b)(iii). What XM Radio fails to acknowledge, though, is that Mr. Enderlin's challenge to the enforceability of the arbitration clause is a "legal or equitable claim" "based on Section 11(b)" just as much as any challenge to an arbitration award under § 11(b)(iii) would be. The two interpretations are not mutually exclusive, yet XM Radio is essentially asking us to read § 11(c)(ii) as referring only to subsection § 11(b)(iii), rather than to § 11(b) as a whole. We are not at liberty, however, to read terms into an agreement that it does not contain. And the fact that the other exceptions to arbitration, set forth in § 11(c)(i) and § 11(c)(iii), refer to "disputes" rather than to "Claims" makes sense because those exceptions relate to claims that may or may not constitute a "Claim" as defined in the agreement: Because these exceptions refer to claims concerning intellectual property rights and violations of the Federal Communications Act, they could arise independent of the agreement and the services provided thereunder, in which case they would not be "Claim[s]."

For the reasons set forth above, we affirm the judgment of the district court.

_____