# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3157

_____

Mary Triplet, as Guardian and Conservator of Margaret Triplet; Margaret Triplet

*Plaintiffs - Appellees*

v.

Menard, Inc.; Barb Myers

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of South Dakota - Northern

_____

Submitted: May 12, 2022
Filed: July 29, 2022

_____

Before ERICKSON, STRAS, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Maggie Triplet sued Menard, Inc. and Barb Myers for employment discrimination and several state-law torts. Menard filed a motion to compel arbitration under a clause in Maggie's employment agreement. The district court denied the motion, and Menard appealed. We vacate the district court's order and remand for further proceedings consistent with this opinion.

I.

Maggie Triplet has severe autism, which makes it difficult for her to recognize social cues, resist influence from others, keep a job, and manage her personal affairs. In 2016, a South Dakota court appointed her mother, Mary Triplet, as her guardian and conservator.

Because Maggie's condition makes holding a job difficult, Mary arranged for a state-sponsored job coach to help Maggie. The coach took Maggie to a job fair at a Menards[1] store in Watertown. The coach explained her role and asked Menards employees to let her help Maggie with her application and interview. They refused, so Maggie filled out the application and did the interview by herself, and Menard hired Maggie as a cashier. During the store's job orientation, Maggie's coach again asked to help Maggie. But Menard refused, and Maggie went alone. At the orientation, Maggie signed an employment agreement that included an arbitration clause. She had no opportunity to show the agreement to her coach or Mary for review.

Menard did not allow Maggie's coach to assist her when working. Maggie struggled to meet expectations as a cashier, so the store transferred her to the garden department. But she had trouble acclimating to that position as well. Maggie's workplace problems came to a head one day when she became overstimulated, "shut down," and huddled in the corner of the garden center. Her manager, Barb Myers, responded by yelling, pinning Maggie's arms behind her back, and "dragging" her to the Menards supervisor. The supervisor told Maggie to either sign resignation papers or be fired, and that it was in her best interest to resign. Maggie signed the resignation papers without the opportunity to talk to her coach or Mary.

Maggie and Mary, as her guardian and conservator, sued Menard and Myers for employment discrimination under the Americans with Disabilities Act, and for

---

[1]Menard, Inc. owns the Menards chain of home improvement retail stores.

state-law assault, battery, and intentional infliction of emotional distress. Because Maggie's employment agreement contained an arbitration clause, Menard and Myers filed a motion to compel arbitration and stay proceedings. The district court denied the motion, holding that: (1) the arbitration agreement was unenforceable as a matter of equity; (2) Myers couldn't enforce the agreement as a non-signatory; and (3) the state-law tort claims were outside the scope of arbitration. Menard and Myers appealed.

## II.

We review the denial of a motion to compel arbitration *de novo*. *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008). We also review the district court's interpretation of a contract *de novo* and its factual findings for clear error. *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999).

The Federal Arbitration Act allows parties to use arbitration, instead of lawsuits, to resolve their disputes. 9 U.S.C. § 2. "A court must grant a motion to compel arbitration if a valid arbitration clause exists which encompasses the dispute between the parties." *3M*, 542 F.3d at 1198 (citing 9 U.S.C. § 4). The FAA promotes a "liberal federal policy favoring arbitration agreements," and "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Because of this, the FAA "leaves no place for the exercise of discretion by a district court" and obligates the court to refer arbitrable matters to binding arbitration. *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004) (citation omitted).

Written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "A court's role under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Pro Tech Indus.*, 377 F.3d at 871.

The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25. The party resisting arbitration bears the burden of showing either that the arbitration provision is invalid or that it does not encompass the claims at issue. *See E.E.O.C. v. Woodmen of World Life Ins. Soc'y*, 479 F.3d 561, 565 (8th Cir. 2007). State contract law governs whether a valid agreement to arbitrate exists. *Id.* The parties agree that South Dakota law applies here.

The district court concluded that "grounds as exist at law or in equity" rendered the arbitration agreement unenforceable. *See* 9 U.S.C. § 2. Specifically, the court reasoned that Maggie's status as the ward of a guardianship and conservatorship, as well as Menard's refusal to let Maggie's job coach assist her in reviewing the employment agreement, made it inequitable to enforce the arbitration clause. But the court did not decide whether Maggie was incapable, *as a matter of law*, of entering a contract.

While the district court focused on fairness, written arbitration agreements are unenforceable under the FAA only if state-law grounds exist to revoke the contract. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) ("This saving clause permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" (citation omitted)); *Plummer v. McSweeney*, 941 F.3d 341, 345 (8th Cir. 2019) ("Under the FAA, agreements to arbitrate 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' One of these grounds is unconscionability." (citation omitted)). In other words, there must be an applicable state-law contract defense. The district court, however, did not identify such a defense. Nor did it analyze the validity of the agreement under South Dakota contract law.

In South Dakota, the "[e]lements essential to existence of a contract are: (1) [p]arties capable of contracting; (2) [t]heir consent; (3) [a] lawful object; and (4) [s]ufficient cause or consideration." SDCL § 53-1-2. By statute, "[a]ll persons are

-4-

capable of contracting except minors, persons of unsound mind, and persons deprived of civil rights." SDCL § 53-2-1. "Minors and persons of unsound mind have only such capacity as is specified in the statutes relating to such persons." SDCL § 53-2-2.

Maggie argues that, because of her diminished capacities which required her to be placed under conservatorship, she was incapable of contracting under South Dakota law. But the guardianship and conservatorship statute explains that "[t]he appointment of a guardian or conservator of a protected person does not constitute a general finding of legal incompetence unless the court so orders, and the protected person shall otherwise retain all rights which have not been granted to the guardian or conservator." SDCL § 29A-5-118. And the court that ordered Maggie's guardianship and conservatorship did not grant her contract rights to Mary or find that Maggie was legally incompetent to contract. Because the state court did not disturb her contractual rights, Maggie is still subject to the general presumption of capacity in SDCL § 53-2-1.

Although the arbitration agreement is facially valid under South Dakota positive law, it may be revocable under the void contract defense. "Historically, the void contract concept has been applied to nullify agreements made by mental incompetents who have contracted either entirely without understanding or after a judicial determination of incapacity had been entered." *First State Bank of Sinai v. Hyland*, 399 N.W.2d 894, 896 (S.D. 1987). "A party attempting to avoid his contract must carry the burden of proving that he was entirely without understanding when he contracted." *Id.* at 897. "Lapse of memory, carelessness of person and property, and unreasonableness are not determinative of one's ability to presently enter into an agreement." *Id.* "Neither should a contract be found void because of previous or subsequent incompetence." *Id.* Instead, the "inquiry must always focus on the person's mental acuity and understanding of the transaction at the time contracting occurred." *Id.*

The district court did not decide whether Maggie was "entirely without understanding" at the time she signed the arbitration agreement. Nor is the record developed enough for us to make that finding.[2] We remand the case for a summary trial to determine whether the arbitration agreement is enforceable under South Dakota law.[3] *See Neb. Mach. Co. v. Cargotec Sols., LLC*, 762 F.3d 737, 744 (8th Cir. 2014) (remanding a motion to compel arbitration "for the district court to hold a non jury trial, make findings of fact, and apply the appropriate [law] in light of those facts").

## III.

For the foregoing reasons, we vacate and remand for the district court to make the appropriate findings consistent with this opinion.

_____

[2]Maggie underwent a psychiatric evaluation as part of the proceedings that led to her placement under a guardianship and conservatorship. That evaluation, however, does not reveal whether Maggie was "entirely without understanding" at the time she signed the arbitration agreement because it was conducted two years earlier and focused on her language and social skills—not her ability to understand legal agreements.

[3]Because we cannot determine whether there is an enforceable arbitration agreement, we decline to consider whether Myers may enforce the agreement as a non-signatory.