# United States Court of Appeals
### For the Eighth Circuit
_____

No. 22-1817
_____

H&T Fair Hills, Ltd., on behalf of themselves and all others similarly situated; Norman Zimmerman, on behalf of themselves and all others similarly situated; Donna Zimmerman, on behalf of themselves and all others similarly situated; Steven Wherry, on behalf of themselves and all others similarly situated; Valerie Wherry, on behalf of themselves and all others similarly situated; Robert Ruebel, on behalf of themselves and all others similarly situated; Mary Ruebel, on behalf of themselves and all others similarly situated; Larry Ruebel, on behalf of themselves and all others similarly situated; Mark Hein, on behalf of themselves and all others similarly situated; Debra Hein, on behalf of themselves and all others similarly situated; Nicholas Hein, on behalf of themselves and all others similarly situated

*Plaintiffs - Appellees*

v.

Alliance Pipeline L.P., also known as Alliance USA

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: December 13, 2022
Filed: August 10, 2023
_____

Before LOKEN, MELLOY, and KOBES, Circuit Judges.
_____

MELLOY, Circuit Judge.

Alliance Pipeline L.P. ("Alliance") entered into contracts with four states ("State Agreements") as well as contracts with individual landowners in order to build a natural gas pipeline. The contracts with landowners provide easements for the pipeline right-of-way. In 2018, some landowners on the pipeline right-of-way filed a class-action lawsuit against Alliance. The plaintiffs asserted Alliance violated their contractual rights by refusing to pay landowners for damages to crops. After the class was certified, Alliance moved to compel arbitration for the approximately 73 percent of plaintiffs whose easements contain arbitration provisions. The district court found the plaintiffs whose easements contain arbitration provisions had agreed to arbitrate some, but not all, of the relevant issues in the litigation. Alliance appealed, arguing the district court erred by not sending all issues to arbitration for the plaintiffs whose easements contain arbitration provisions. We affirm in part and reverse in part.

I.

In 1997, Alliance entered into the State Agreements with North Dakota, Minnesota, Iowa, and Illinois to build a natural gas pipeline through the states. [1] The State Agreements, entitled Agricultural Impact Mitigation Agreements, require Alliance "to mitigate, or provide compensation for, negative agricultural impacts that may occur due to Pipeline Construction" including damages or losses to crops. The State Agreements include provisions for Alliance to continue to compensate landowners for damages or losses caused after the construction of the pipeline. The states and Alliance negotiated and signed the State Agreements. The landowners were not parties to the State Agreements.

After Alliance signed the State Agreements, but before constructing the pipeline, Alliance negotiated the easements with individual landowners to give Alliance a right-of-way across the land. Alliance sent solicitation letters to and met with landowners to negotiate the easements. In addition to providing for an initial

_____

[1]There are three State Agreements: 1) Alliance, Iowa, and Minnesota; 2) Alliance and North Dakota; and 3) Alliance and Illinois.

payment, each easement contained a provision requiring Alliance to pay for damages to crops. The easements were not identical, but typical easement language stated: "[t]he Grantee shall pay for damages to crops, . . . which may arise from the laying, constructing, maintaining, operating, repairing, replacing or removing of the said pipeline."[2] The majority of easements went on to state: "[s]aid damages, if not mutually agreed upon, shall be determined by arbitration before three (3) disinterested persons[.]" Because Alliance negotiated the easements with individual landowners, not all of the easements contain an arbitration provision; approximately 27 percent of landowners negotiated easements without arbitration provisions. Alliance began construction of the pipeline after acquiring all the easements.

After the pipeline became operational in 2000, Alliance created the "Crop Yield Program," an optional program to assist in administering compensation to landowners. If landowners chose to participate in the program, Alliance would provide an agronomist to take crop samples and determine if there was a difference in yields between parcels on and off the pipeline right-of-way. Alliance and landowners would then negotiate both the compensable magnitude of any differential as well as any payment. Alliance began putting restrictions on the Crop Yield Program after only a few years. In 2003, Alliance put strict deadlines on applying for the program. In 2006, Alliance put more restrictions on how the samples were taken. In 2013, Alliance stated it would no longer provide complimentary agronomists to the landowners as part of the Crop Yield Program. And finally in 2015, Alliance ended the Crop Yield Program. After Alliance ended the Crop Yield Program, landowners continued to hire agronomists and submit crop-loss claims to Alliance in a decentralized manner. In the present complaint, Plaintiffs assert Alliance denied all claims for compensation after 2015. Reportedly, Alliance denied the claims because without any "operational activities" on the land Alliance could not determine causation.

---

[2]Easement language varies. For example, some easements also cover damages caused by surveying, inspecting, altering, or abandoning the pipeline.

In 2019, Plaintiffs filed this class-action complaint alleging breach of contract, nuisance, and fraudulent inducement. In their complaint, Plaintiffs requested declaratory judgment to require Alliance to pay for crop loss starting in 2015 and moving forward. None of the named plaintiffs' easements contain arbitration provisions. Alliance argued against class certification in part because, while none of the named plaintiffs' easements have arbitration provisions, many of the proposed class plaintiffs' easements have arbitration provisions. In June 2021, the district court certified a class for: "All persons or entities who held or hold a land interest on Defendant's Pipeline Right of Way and who, since 2014, were or are eligible for crop loss compensation pursuant to easements or [State Agreements]." Alliance filed a petition for permission to appeal the class certification, which our court denied.

## II.

After the class was certified, Alliance filed a motion to compel arbitration. Plaintiffs opposed the motion for three reasons. First, Plaintiffs argued the arbitration provisions are limited to damages to crops, whereas the complaint seeks remedies for ongoing yield loss caused by soil injury. Second, Plaintiffs argued their causes of action arose under the State Agreements, which do not contain arbitration provisions. Third, Plaintiffs argued Alliance waived the right to enforce any arbitration provision by waiting to file the motion to compel arbitration until more than two years after the complaint was filed. The district court addressed the motion to compel arbitration in a March 2022 order.

The district court concluded the arbitration provisions are valid agreements to arbitrate which cover some of the issues in the case. The district court ordered the plaintiffs with easements containing arbitration provisions to arbitrate as to two issues related to damages, namely whether the pipeline had caused damages to crops and the value of any damages to crops. The district court found Plaintiffs could not keep these issues in court by claiming to sue under the State Agreements. The district court concluded that while Plaintiffs could enforce the State Agreements as intended

beneficiaries, they could not bring a claim under the State Agreements if the same claim could be brought under the easements.

The district court did not order any plaintiff whose easement lacked an arbitration provision to participate in arbitration. Further, the district court ordered the case to continue in court for all plaintiffs as to three issues the district court "carved out" as non-arbitrable under the arbitration provisions: first, whether "Alliance breached its contractual obligations by announcing the termination of its Crop Yield Program;" second, whether "Plaintiffs are entitled to compensation for any diminution in crop yield on the Pipeline right-of-way even without showing that Alliance caused crop damage;" and third, whether Plaintiffs are entitled to "declaratory relief interpreting the requirements of the easements and [State Agreements]." Accordingly, the district court ordered a limited stay, staying only the damages issues discussed previously, for the parties subject to the arbitration agreement. However, in the order on the motion to compel, the district court did not order any issues be stayed for the plaintiffs it found were not subject to an arbitration provision.

Finally, the district court found Plaintiffs did not meet the burden of proof necessary to show Alliance waived the right to compel arbitration. The district court noted, "since no Named Plaintiffs are subject to the arbitration agreements, Alliance had no reason to raise arbitration as an affirmative defense in an Answer that preceded class certification."

Alliance filed a timely appeal, arguing all issues are subject to arbitration for those plaintiffs whose easements contain an arbitration provision. Essentially, Alliance left unchallenged the district court's arbitration ruling other than the district court's carving out of three issues to preserve for litigation. Alliance also filed a motion in the district court to stay all proceedings pending appeal including proceedings for those plaintiffs whose easements do not contain an arbitration provision. The district court granted the broader stay pending appeal as requested by Alliance.

-5-

After the window to appeal the original order on the motion to compel had passed, the plaintiffs filed their responsive brief with this court. The responsive brief argued none of the issues, including the damages issues, should be subject to arbitration. In addition to the responsive brief, the plaintiffs filed a separate petition with this court seeking reversal of the later-issued stay pending appeal in which the district court stayed litigation of all issues. In the same filing, plaintiffs sought permission to file an untimely cross appeal of the original stay, arguing this court should be able to review whether the district court erred by finding *any* issue arbitrable. Both requests were denied.

Plaintiffs now argue a cross-appeal is not necessary for this court to reverse that part of the district court's original stay that finds some issues arbitrable. Alliance asserts that reversing the district court's order to stay some issues for arbitration, in effect finding no issues are subject to arbitration, would reach beyond issues raised in Alliance's own timely filed appeal. According to Alliance, such a ruling would expand Plaintiffs' rights in a manner that would be prohibited without a cross appeal. See East Iowa Plastics, Inc. v. PI, Inc., 889 F.3d 454, 459 (8th Cir. 2018). Because we conclude the district court properly ordered arbitration of damages issues but erred in carving out issues from arbitration, we essentially hold that the plaintiffs' arguments concerning the scope of arbitration lack merit. As such we need not decide whether Plaintiffs' request to appeal the decision to arbitrate damages issues was "fairly included" in Alliance's appeal. See Donelson v. Ameriprise Fin. Servs., Inc., 999 F.3d 1080, 1087 (8th Cir. 2021) (citation omitted).

III.

We review the district court's decision to deny or grant a motion to compel arbitration de novo. Triplet v. Menard, Inc., 42 F.4th 868, 870 (8th Cir. 2022). Because there is no question that valid agreements exist, "[t]he party resisting arbitration bears the burden of showing either that the arbitration provision is invalid or that it does not encompass the claims at issue." Id.; but see Ballou v. Asset Mktg. Servs., LLC, 46 F.4th 844, 851 (8th Cir. 2022) (holding "party seeking to compel

arbitration bears the burden to prove a valid contract."). "'The scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration.' A motion to compel arbitration 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Indus. Wire Prods., Inc. v. Costco Wholesale Corp., 576 F.3d 516, 520 (8th Cir. 2009) (citations omitted); see also Triplet, 42 F.4th at 870.

As a preliminary matter, Plaintiffs argue Alliance waived the right to enforce any arbitration provision. "Waiver . . . 'is the intentional relinquishment or abandonment of a known right.'" Morgan v. Sundance, Inc., 142 S. Ct. 1708, 1713 (2022) (citation omitted). "To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." Id. Alliance did not act inconsistently with its right to arbitrate. As the district court noted, none of the named plaintiffs in this class action have arbitration provisions in their easements. Therefore, a motion to compel arbitration prior to class certification would have been a motion to bind parties who were not yet part of the case. Alliance acted consistently with its right to arbitrate by filing a motion to compel arbitration quickly after the class was certified to include some plaintiffs whose easements have an arbitration provision.

A.

We agree with the district court that the damages issues are subject to arbitration for the plaintiffs whose easements contain an arbitration provision. Plaintiffs make two arguments against sending any issues to arbitration: (1) Plaintiffs' claims cannot be within the scope of the arbitration provisions because the claims allege lack of compensation for "ongoing yield losses" not "damages to crops" and (2) Plaintiffs' claims arise under the State Agreements, which do not have arbitration provisions. We find the arbitration agreements to be enforceable and to cover all issues.

Plaintiffs' first argument, that they are suing for compensation for diminished crop yield and not damages to crops, fails to draw a distinction which puts the dispute outside the scope of the arbitration provision. As discussed, if doubts exist as to the arbitrability of an issue, the Federal Arbitration Act requires the disputes to be resolved in favor of arbitration. Triplet, 42 F.4th at 870. "Our task is to look past the labels the parties attach to their claims to the underlying factual allegations and determine whether they fall within the scope of the arbitration clause." 3M Co. v. Amtex Sec., Inc., 542 F.3d 1193, 1199 (8th Cir. 2008).

Under the easements, Alliance must pay for "damages to crops, . . . which may arise from the laying, constructing, maintaining, operating, repairing, replacing or removing of the said pipeline." The easements with arbitration provisions go on to state: "[s]aid damages, if not mutually agreed upon, shall be determined by arbitration[.]" Plaintiffs argue no landowners whose easements contain an arbitration provision are subject to arbitration because the provisions are limited to "damages to crops" and do not cover "diminished crop yield." Nowhere in either the State Agreements nor the easements do parties differentiate between "diminished crop yield" and "damages to crops." Plaintiffs' attempt to draw such a distinction lacks any textual basis. Any distinction between "diminished crop yield" and "damages to crops" is subtle and, for purposes of determining arbitrability, the dispute about whether a distinction exists must be resolved in favor of arbitration. It will be up to the arbitrator to determine the nature and extent of any crop loss and to what extent "crop yield loss" is included in "damages to crops."

Second, Plaintiffs argue in essence that the State Agreements either invalidate any arbitration provision in the easements or provide a separate avenue for Plaintiffs' arguments to end up in court. Because we find the issues in this case fall under the arbitration provisions, the question becomes whether the State Agreements prohibit the use of arbitration provisions in the easements. We conclude they do not. The State Agreements set a baseline level of protection for landowners but require landowners to negotiate the details of their own protections through easements.

Additionally, the vague nature of any damages provisions in the State Agreements show the easements are necessary to specify compensation. For example, the North Dakota State Agreement and the Iowa-Minnesota State Agreement both require Alliance to pay for damages which "*may include but are not limited to* loss of crops . . ." The Illinois State Agreement does not specify which properties are covered by the agreement, only specifying causes of damage to private property. The State Agreements do not prohibit the use of arbitration provisions in easements.

B.

In addition to finding damages issues are subject to the arbitration provisions, we conclude that the three issues carved out by the district court to remain in litigation are also subject to the arbitration provisions. The issues carved out by the district court are integral to the issues subject to arbitration. If the court determines a contract shows the parties intended to arbitrate grievances "then it is for the arbitrator to determine the relative merits of the parties' substantive interpretations of the agreement." AT&T Techs., Inc. v. Commc'ns Workers of America, 475 U.S. 643, 651 (1986).

The first question carved out by the district court, whether Alliance is required to continue the Crop Yield Program, is inextricably intertwined with the damages issues that are to be arbitrated. Neither the State Agreements nor the easements expressly require the use of the Crop Yield Program. Alliance created the Crop Yield Program to help manage its duty to compensate landowners. How Alliance fulfills its duties under the easements, including whether Alliance was required to run the Crop Yield Program, is an issue to be arbitrated. If a court were to decide this issue it would be "rul[ing] on the potential merits of the underlying claims." Crown Cork & Seal Co. v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, 501 F.3d 912, 917 (8th Cir. 2007) (citation omitted). Something that should be avoided. Id.

The second question, whether Plaintiffs must show the damages to crops were caused by Alliance, is likewise bound together with the issues of damages. The

easements require Alliance to pay for damages "which *may arise* from the laying, constructing, maintaining, operating, repairing, replacing or removing of said pipeline[.]" The easements do not specify whether landowners must show damage observed after operational activities are linked to previous operational activities. The easements with arbitration provisions provide: "[s]aid damages, if not agreed upon, shall be determined by arbitration." The question about interpreting the definition of damages in the easement is subject to arbitration for those plaintiffs whose easements contain arbitration provisions.

Finally, the arbitration provisions cover the question of declaratory relief. The complaint asks for declaratory relief "to require the ongoing payment of crop yield loss damages starting from the 2015 cancellation of the Crop Loss Program, and continuing for the operational life of the Pipeline." A finding on this issue would require the district court to define damages and the scope of said damages. Two issues clearly reserved for arbitration.

## IV.

The district court order is affirmed in part and reversed in part. Essentially, the district court will be required to dismiss from the class those members subject to arbitration agreements. As to the arbitration class members, the claims should be dismissed without prejudice. As to the members of the class without arbitration provisions, we see no reason why these class members cannot proceed with the lawsuit in the normal course at the district court.

_____